394 So.2d 1192 (1981)
STATE of Louisiana
v.
Gregg A. AULT.
No. 67766.
Supreme Court of Louisiana.
January 26, 1981.
Rehearing Denied March 20, 1981.
*1193 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., R. Greg Fowler, Asst. Dist. Atty., for plaintiff-appellee.
J. Michael Small, Alexandria, for defendant-appellant.
BLANCHE, Justice.
Defendant was charged with possession with intent to distribute a Schedule II Controlled Dangerous Substance (methamphetamine) in violation of R.S. 40:967. After the trial judge overruled his motion to suppress the drug seized from his vehicle and any other evidence resulting from that seizure, defendant pleaded guilty to the offense, reserving his right to appeal the ruling on his motion to suppress. Defendant has appealed from that ruling and, for the following reasons, we affirm.
The evidence adduced at the hearing of the motion to suppress shows that on December 3, 1979 at approximately 9:00 p. m. Deputies Burr and Barrett of the Rapides Parish Sheriff's Department were at a service station located across from MacArthur Drive in Alexandria, Louisiana refueling Burr's sheriff's department vehicle. They observed a dark colored Thunderbird automobile exit off MacArthur Drive onto the service road "at an unsafe speed" and watched as the auto "continued at high speed down the service road." The tires of that vehicle made a sound as it turned onto the service road, and Deputy Barrett testified he believed that the tire noise resulted from the erratic nature of the operation of the Thunderbird. One of the two deputies commented that the car was being operated in a reckless manner and the deputies decided to attempt to stop the vehicle to "determine what the problem was."
*1194 The deputies were travelling in separate cars and proceeded in the direction of the Thunderbird. They followed that vehicle as it turned onto Jackson Extension, then lost sight of it for two to three minutes. The auto was next sighted returning on Jackson Extension and was proceeding thereon in the opposite direction from which it had gone. It passed the sheriff's deputies on Jackson Extension proceeding "still at a high rate of speed" as it travelled back toward MacArthur Drive. Deputy Burr turned and followed the Thunderbird and stopped it in the parking lot of a restaurant. Deputy Barrett also drove into the lot after Burr had accomplished the stop. The driver of the Thunderbird is stipulated to be defendant, Gregg Ault.
The deputies obtained defendant's driver's license from him and then radioed the sheriff's department to determine if there were any outstanding warrants for Gregg Ault. They were apprised of none. They then asked defendant why he had been driving in the manner he had been and Ault responded that someone had been chasing him. When asked why he was being chased, he stated he had nothing in the vehicle they might want except for money. At one point in this conversation, defendant pointed out several autos on MacArthur Drive, indicating that these were the persons who had been chasing him. There was mud and grass hanging from beneath the back bumper which, according to defendant, was caused by his running off of the road to avoid the people who were pursuing him.
Deputy Barrett then asked if Ault had anything in his trunk the pursuers might want, but defendant indicated he only had tools for his job and clothing stored there. At this point, both deputies asked if he would mind if they looked in the trunk. Defendant opened the trunk with his keys, reached into the trunk and appeared to move something around. Deputy Burr asked defendant what was in a bag in the trunk. Deputy Barrett moved closer to the trunk and saw the bag, to which Burr had referred, i. e. a plastic bag the size of a sandwich bag containing an off-white substance located on the spare tire in the trunk. Deputy Barrett then stated, "Well, what do we have here", and defendant turned to him and responded "they call it crystal". Barrett, who was a narcotics officer and who had been trained in the area of narcotics, thought the substance looked like contraband, either heroin, cocaine or "crystal", and he understood the term "crystal" to refer to the drug methamphetamine hydrochloride.
Deputy Barrett placed defendant under arrest, advised him of his rights, searched him and handcuffed him. The officer radioed in to request that a district attorney be notified and that a supervisor contact him and, later, radioed for a wrecker. He next obtained a consent to search form from his automobile and read it to defendant. Defendant Ault also read it before he signed the form, and the suspected contraband was then seized after defendant was taken away. Defendant signed the consent form approximately 20 minutes after he had opened his trunk for the officers. Up to that time, the suspected contraband had not been tampered with. Deputy Barrett testified that he had no knowledge of any ticket issued to defendant for any traffic offense arising out of the above incident.
The above evidence was adduced from the testimony of Deputy Barrett, who was the only witness at the hearing on the motion to suppress. The state and the defense stipulated that the testimony of Deputy Burr would have been essentially similar to that of Deputy Barrett.
Defendant contends that the trial judge erred in overruling the motion to suppress because the deputies were not justified in stopping defendant and any consent to search subsequently obtained from defendant was tainted by the initial illegality. We disagree with these contentions. The officers were justified in making an investigatory stop of defendant as authorized by the Code of Criminal Procedure art. 215.1. That article provides in part that:
"A law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed *1195 or is about to commit a felony or misdemeanor and may demand of him his name, address and an explanation of his actions."
According to State v. Edsall, 385 So.2d 207 (La.1980), "reasonable cause for an investigatory stop is something less than probable cause. Nevertheless, it requires the detaining officer to have articulable knowledge of particular facts sufficient reasonably to suspect the detained person of criminal activity."
In State v. Lukefahr, 363 So.2d 661 (La. 1978), this Court held that where a police officer observed a vehicle cross the center line and force another motorist off of the travelled portion of the road, the officer was justified in stopping him for a traffic violation. We hold that the deputies in the instant case also had articulable knowledge of particular facts sufficient reasonably to suspect defendant of criminal activity in that he was operating his vehicle in a reckless and careless manner in violation of R.S. 14:99. Prior to stopping defendant Ault, the officers observed him exiting from a highway onto a service road at an unsafe speed, heard his tires creating a noise Officer Barrett testified he presumed resulted from erratic driving, watched as defendant continued down the road at a high speed, followed him and encountered Ault still driving at a high rate of speed after he turned and travelled back in the direction he had come, passing the pursuing officers. These facts justified the officers to reasonably suspect the defendant was committing the misdemeanor of reckless operation of a motor vehicle in violation of R.S. 14:99 (the operation of a motor vehicle in a criminally negligent or reckless manner). In accordance with C.Cr.P. art. 215.1, the officers stopped this defendant in a public place and requested his driver's license to determine his name and address and asked for an explanation of his actions.
This case is distinguishable from the case of State ex rel Palermo v. Hawsey, 377 So.2d 338 (La.1979), cited in defendant's brief. In that case, the majority of this Court held that a police officer had no probable cause to arrest a defendant for a traffic violation where he had observed that defendant driving out of a parking lot "accelerating, spinning his tires". The difference is that we did not regard this conduct under the circumstances as a violation of R.S. 14:99, and the state specifically conceded that the defendant had not violated R.S. 32:103, which requires the operation of a vehicle from a parked position "with reasonable safety". We then found no probable cause to arrest for reckless operation of a vehicle or for any other traffic offense. Unlike the facts in the case at hand, Palmero dealt with probable cause to arrest, a more stringent standard to meet (as noted above) than the reasonable suspicion required for an investigatory stop, the standard at issue here. Also, significantly, the Palermo Court specifically found that there was no evidence in the record that defendant was "speeding, weaving in his lane, crossing the center line, or giving any other indication he was operating his vehicle recklessly or in violation of any other traffic provision." The instant facts, in our opinion, do give rise to a justifiable basis for stopping this defendant to ask for his name and address and for an explanation of his actions in accordance with C.Cr.P. art. 215.1 as the officers could reasonably suspect that he had committed the misdemeanor of reckless operation of a vehicle.
After the legal stop of Ault, the facts show that he freely and voluntarily consented to open his trunk when the officers asked if he minded doing so. In State v. Lukefahr, supra the defendant was also stopped for a traffic offense and then asked by police officers if he minded opening the back of the truck he was driving. Defendant replied that he did not mind, produced the keys, and opened the back of the truck, revealing contraband. As the Court then noted "under these circumstances, indicating a genuine and voluntary consent, it is not determinative whether probable cause existed for the search or whether the defendant had been warned of his right to refuse to permit the search. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 *1196 L.Ed.2d 854 (1973)." Further, in the instant case, defendant again consented in writing to the search and seizure of the contraband from his trunk approximately 20 minutes after the officers had viewed the suspected contraband and after being informed of his right to refuse to consent to the search. Defendant's consent also dispensed with the requirement of a search warrant. Schneckloth, supra; State v. Dowling, 387 So.2d 1165 (La.1980).
For the above reasons, we hold that the investigatory stop for a suspected traffic violation was justified and the subsequent search for and seizure of contraband was conducted with the free and voluntary consent of defendant. Defendant's motion to suppress the contraband and evidence obtained as a result of that seizure was properly denied.
DIXON, C. J., dissents.
DENNIS, J., dissents with reasons.
CALOGERO, J., dissents for reasons assigned by DENNIS, J.
DENNIS, Justice, dissenting.
I respectfully dissent.
Officer Barrett's testimony did not establish legal cause to stop the defendant, and clearly did not articulate a reason to detain him on suspicion of other criminal activity. According to Barrett, the decision to stop the defendant was made because the defendant's tires squealed as he turned onto the service road, and the vehicle continued on at a speed which Barrett described variously as "unsafe" and "high." But when asked to explain the significance placed on the noise by the tires, the officer replied only that "... there would have to be some erratic driving to make the noise, I, I really can't, can't say." Furthermore, Barrett never testified that the "unsafe" or "high" speed he observed exceeded lawful speed limits, nor did he articulate any reason why it appeared unreasonable or unsafe for the road conditions at the time. Given the opportunity to justify a traffic stop, Officer Barrett could not do so, and this Court should not do it for him.
In addition, even if it had been established that the officers had probable cause to arrest the defendant for a traffic violation, they did not have articulable knowledge of particular facts sufficient reasonably to suspect him of other criminal activity. In fact, Officer Barrett testified that he had no reason to suspect Ault of any wrongdoing until he looked into the trunk. Therefore, the extended detention of his person for questioning about the contents of the automobile trunk was an unreasonable seizure prohibited by our constitutions.
CALOGERO, Justice, dissenting.
I dissent for the reason that I believe the police had neither probable cause to arrest nor reasonable cause to detain defendant under C.Cr.P. art. 215.1.
The officers' own testimony at trial demonstrated that the defendant's operation of his vehicle, as observed by them, did not justify a reasonable belief that defendant had engaged in criminal activity; and the failure of the police to have ticketed defendant further supports this fact. The officers were unable to state that what they had observed amounted to the careless or reckless operation of a motor vehicle. Furthermore, the officers' witnessing activity which may have approached illegality does not serve as reasonable cause to justify an investigatory stop which could not possibly be probative of whether or not the crime had been committed. Witnessing the defendant's operation of his motor vehicle to have fallen short of carelessness or recklessness, the police then had no reason to "suspect" the defendant "is committing, has committed, or is about to commit a felony or misdemeanor ..." as C.Cr.P. art. 215.1 requires. The officers admit to having no reason to suspect the defendant of other criminal activity, as the record will reflect. What the majority proposes would allow a policeman to detain a person in order to investigate crimes which he does not reasonably suspect are being committed, have been committed, or are about to be committed.
*1197 Since the defendant's detention and interrogation were illegal, his consent to search must be considered to have been tainted. Accordingly, I would reverse the ruling of the district court and grant the defendant's motion to suppress the evidence.