400 So.2d 661 (1981)
STATE of Louisiana
v.
Stephen V. BLANTON.
No. 81-K-0394.
Supreme Court of Louisiana.
June 22, 1981.
*662 Roy V. Ladner, Jr., Jacob Kansas, New Orleans, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, George T. Mustakas, II, Asst. Dist. Attys., for plaintiff-respondent.
BLANCHE, Justice.[*]
Defendant, Stephen V. Blanton, was charged with possession with intent to distribute cocaine in violation of R.S. 40:967. Defendant made a motion to suppress all the evidence seized by the narcotics agents. The trial judge suppressed the cocaine discovered in the defendant's briefcase, but held admissible the cocaine seized from the defendant's person. Defendant now raises three assignments of error to this pre-trial ruling. The following facts were brought forth at the evidentiary hearing on the defendant's motion to suppress.
In mid-afternoon on September 17, 1980 the defendant drove to the New Orleans International Airport and picked up Steve and Carmen Basil, who were returning from South America. Narcotics Agent Drum of the Jefferson Parish Sheriff's Office, who was conducting an investigation of the Basils, noted that this was the first time he had seen the defendant. Agent Drum attempted to follow the three from the airport but lost them in traffic.
Agent Drum then went to the Basil home and set up surveillance there. Approximately 1½ hours later, the three drove up to the Basils' residence. Then, after an hour, the defendant emerged alone and drove off. Agent Drum and his partner followed the defendant until he got to Interstate 10. At that point, they decided to return to the Basils' home to continue their surveillance and wait for a search warrant.
Agent Drum radioed Agents Hurley and Moore and asked them to be on the lookout for a male driving a white over blue Dodge. It is disputed, and the testimony is conflicting, whether he gave them the license number of the car. Agent Drum said he was interested in the vehicle in connection with a drug investigation. Agents Hurley and Moore spotted a blue and white Dodge and followed it for awhile on Interstate 10. They radioed in to check the license number. When Agent Drum heard this, he told them that was the proper car.
Defendant pulled off the interstate at the Veterans Highway exit and pulled into the Pizza Hut Restaurant where he was employed as Assistant Manager. The two agents pulled up behind him with their flashing lights on and stopped the defendant. The agents told the defendant he was being stopped because he was an armed robbery suspect. At the hearing the agents both admitted this was a blatant lie, with Agent Hurley saying he didn't believe the defendant should have been told a drug investigation was underway. The agents also testified at the hearing that the real reason they stopped the defendant was because his license plate was improperly illuminated. However, they did not tell him that was the reason he was being stopped, nor did they issue him a traffic citation for that offense.
Once they stopped the defendant, they asked him for identification, and if he had any weapons on him. Defendant stated that a .25 caliber handgun was under the driver's seat, which he turned over to the agents. A records check of the defendant's identification revealed there was an outstanding attachment out for the defendant for a traffic offense in St. Tammany Parish. Defendant was then arrested and searched. An amber plastic vial 1½ inches *663 long was taken from the defendant's front trouser pocket. Its contents were field-tested and determined to be cocaine. Defendant was then also charged with possession.
The agents had learned the blue and white Dodge belonged to the defendant's girlfriend. Supposedly to secure it, they drove it to a less conspicuous portion of the Pizza Hut parking lot, though it was not blocking traffic where the defendant had originally parked it. Agent Hurley had taken the defendant's briefcase off the front seat and opened it even though defendant told him not to do so. Agent Hurley admitted this at the hearing. The briefcase contained $794 in cash and 13 more small vials of cocaine. Defendant was then additionally charged with possession with intent to distribute cocaine. This evidence was suppressed by the trial judge.
At the hearing the trial judge stated he did not think the agents stopped the defendant for an improperly illuminated license plate. However, he ruled the agents had reasonable grounds to stop the defendant because of the ongoing drug investigation.
Finding merit in the defendant's contention that the cocaine on his person should also have been suppressed as the product of an unlawful stop and seizure, we need not address the other assignments of error raised by the defendant.
We do not believe Agents Hurley and Moore had the authority to stop the defendant in the first place. Code of Criminal Procedure art. 215.1 provides in pertinent part:
"A. A law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or a misdemeanor and may demand of him his name, address and an explanation of his actions."
First, we find no error in the trial judge's statement that he did not think the agents stopped the defendant for an improperly illuminated license plate light. We observe that the agents followed the defendant down Interstate 10 and radioed in for a check of the license number in the late evening; therefore, they must have been able to see the license plate in the dark. Upon stopping the defendant, they did not tell him he was being stopped because of his license plate light, but fabricated the armed robbery suspect story. No traffic citation was issued to the defendant, though the agents admitted they have given citations before. Finally, the defendant never knew there was a problem with the license plate light until the hearing when this excuse for stopping him was made. The car has a valid safety inspection sticker and no one had observed the deficiency before. Considering all of these facts we also do not believe the agents stopped the defendant for an improperly illuminated license plate, and this can not serve as a valid justification for stopping the defendant.
However, we must disagree with the trial judge's determination that the agents could stop the defendant because of the ongoing drug investigation. We have previously held:
"Reasonable cause for an investigatory stop or detention is something less than probable cause. Nevertheless, it requires the detaining officer to have articulable knowledge of particular facts sufficient reasonably to suspect the detained person of criminal activity." State v. Ault, 394 So.2d 1192 (La.1981); State v. Edsall, 385 So.2d 207 (La.1980).
These agents did not have reasonable grounds to suspect the defendant of criminal activity.
Agents Hurley and Moore were just informed by Agent Drum to be on the lookout for the defendant's vehicle as Agent Drum was interested in the vehicle in connection with a drug investigation. They were merely to watch the vehicle and to see what they could learn from such a surveillance.
Even assuming Agents Hurley and Moore could properly identify the defendant's vehicle on Interstate 10 and had known all Agent Drum knew about the defendant (which they did not), that would *664 still be insufficient for an art. 215.1 stop. All Agent Drum knew about the defendant was that he had met the Basils at the airport and had driven them home; never before was this defendant linked to any aspect of this ongoing drug investigation.
Just because the defendant met some people who were under surveillance for drug violations and drove them home does not give the police the right to stop and search him. We have repeatedly upheld the principle that one is not guilty or subject to an unlawful stop and seizure merely because of his associations. State v. Jones, 308 So.2d 790 (La.1975) wherein defendant left the house suspected to contain marijuana; State v. Saia, 302 So.2d 869 (La.1974) wherein defendant exited a residence known as a drug outlet; State v. Kinnemann, 337 So.2d 441 (La.1976), wherein defendant left a house where marijuana was being sold. In all these cases we suppressed the evidence found on the defendant because the initial stop was not valid. The United States Supreme Court has addressed a similar issue, and in Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) said:
"The inference that people who talk to narcotics addicts are engaged in the criminal traffic of narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's security."
In the above cited cases, the police were not allowed to conduct an investigatory stop when the defendants left known drug outlets or were seen with known drug addicts. In this case, the evidence is far shorter than that, for the defendant was merely seen picking up and leaving the presence of those under surveillance for possible drug violations. There were no "known" drug outlets or addicts involved in this case.
As we said in Kinnemann, supra:
"The actions of this person, a stranger to the police, were more consistent with innocence than with guilt. Unless the after-the-stop discovery of the contraband clouds our judgment, we must find that the reasonable probabilities when Sahugue emerged from 1620 Dante Street weighed more heavily on the side of innocence than of guilt."
Again, in this case, unless the after-the-stop discovery of cocaine clouds our judgment, we must conclude the agents had no reasonable grounds to suspect the defendant of criminal activity and their initial stop and seizure was unlawful.
Finding no reason for the agents to stop the defendant because of deficiencies in the automobile or his conduct, we conclude the agents could not make an art. 215.1 investigatory stop. Therefore, the cocaine seized from his person as a product of this invalid stop was unlawfully seized and should have been suppressed. We reverse the trial court's refusal to suppress the cocaine seized from the defendant's person, and the case is remanded for further proceedings not inconsistent with his opinion.
REVERSED AND REMANDED.
REDMANN; J. pro tem., dissents with reasons.
REDMANN, Justice Pro Tem., dissenting.
This Court is unconstitutionally constituted and an accused is denied due process of law by his or her case's being referred to it instead of the Louisiana Supreme Court as constituted by La.Const. Art. 5 §§ 1, 3 and 4, to which this Court should order this case referred.
See the writer's dissent, State v. Petterway, La.1981, 403 So.2d 1157, 1161.
NOTES
[*] Judges William V. Redmann and Thomas J. Kliebert of the Court of Appeal, Fourth Circuit and Judge Cecil C. Cutrer of the Court of Appeal, Third Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Associate Justices Calogero, Dennis, Blanche and Lemmon.