EL PUEBLO DE PUERTO RICO, demandante y peticionario, *v.* JORGE L. ACEVEDO ESCOBAR, acusado y recurrido.

*Número:* O-82-13     *Resuelto:* 13 de mayo de 1982

*Héctor A. Colón Cruz, Procurador General, Josefa A. Román García, Procuradora General Auxiliar,* abogados del demandante y peticionario; *Edwin S. Miranda,* abogado del acusado y recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

A solicitud del Procurador General evaluamos el dictamen del Tribunal Superior, Sala de Aguadilla, que declara con lugar una moción de supresión de evidencia(¹)

---

(¹) Los autos originales demuestran que el 27 de noviembre de 1981 el tribunal de instancia —aun cuando había sido notificado del propósito del Ministerio Fiscal de revisar la Resolución— dictó sentencia de archivo.

promovida por Jorge L. Acevedo Escobar, acusado de violar la Ley de Sustancias Controladas (distribución de marihuana).

## I

Una cabal comprensión de la solución jurídica que adoptamos requiere una exposición del trasfondo fáctico —no contradicho— que tuvo ante sí el foro de origen.[2] El 15 de mayo de 1981, aproximadamente entre las 8:15 y 8:30 P.M., el agente encubierto David Rodríguez Ferrer comunicó telefónicamente a su supervisor Luis A. Cintrón, Director de la Sección de Drogas y Narcóticos de Aguadilla, que había recibido una confidencia de que Acevedo Escobar transportaría diez libras de marihuana desde San Juan al barrio Borinquen, en Aguadilla, durante horas de la noche. El informante que originó la confidencia fue Juan Acevedo, pariente del acusado, quien también le expresó que éste poseía un auto marca Chevrolet, Camaro, color azul. La confidencia surgió como consecuencia de una transacción de compraventa de marihuana habida entre ambos. Con esta información el agente Cintrón, en unión a otros agentes, estableció una vigilancia con dos automóviles no rotulados en un punto de la carretera núm. 2, jurisdicción de Aguadilla. Optó por ese curso de acción, y no gestionó una orden de allanamiento y registro previas, ya que desconocía el tiempo —si poco o mucho— que habría de transcurrir para aproximarse el referido vehículo al área y arribar a su destino. Entre las 9:50 y 9:55 P.M. notaron el vehículo, lo siguieron y posteriormente lo detuvieron. Luego de identificarse, los agentes le requirieron a su conductor —quien resultó ser el acusado acompañado de una dama— su licencia de conducir y del vehículo, las cuales éste entregó. *Le solicitaron que abriera el baúl y*

---

[2] Según surge de la Resolución y las exposiciones de hecho consignadas por las partes en sus respectivos alegatos.

*accedió.* El equipaje consistía de maletas y otros objetos típicos de bagaje y en especial de un bulto de tela rojo marca "Converse" cerrado. El agente Cintrón —con varios años de experiencia en la Unidad de Drogas— percibió el olor peculiar de la marihuana. Estimando que tenía motivos fundados para creer que se estaba cometiendo un delito en su presencia, procedió a arrestarlo. Abrió el bulto rojo y encontró en su interior material característico usado en el tráfico ilegal al detal de la marihuana consistente de trece (13) bolsas de papel de estraza con cinta adhesiva, cuatro (4) bolsas plásticas con aproximadamente una onza de marihuana cada una, una (1) romana, tres (3) estuches de papel de enrollar marihuana y $1,500 en billetes de diferentes denominaciones. El acusado se identificó como agente de Rentas Internas y les informó que no estaba armado. "Supuestamente el imputado resistió el registro y hubo que usar fuerza. Se le hicieron las advertencias y él . . . manifestó que su acompañante era inocente de todo." La Policía confiscó y trasladó el vehículo al Cuartel de Aguadilla e hizo entrega del material al químico. Se inició el proceso judicial.

En la vista sobre la legalidad del registro se estipuló que el mismo se realizó sin orden o mandamiento judicial. La prueba desfilada consistió de los testimonios de los agentes Rodríguez y Cintrón, los cuales atestaron sustancialmente lo antes reseñado. El acusado no desfiló prueba. Esencialmente el acusado alegó y cuestionó ante dicho foro, y reproduce ante nos, su tesis de que el registro fue ilegal e irrazonable a base de la insuficiencia de la confidencia y, además, de lo resuelto en los casos de *United States* v. *Chadwick,* 433 U.S. 1 (1977) y *Robbins* v. *California,* 453 U.S. 420 (1981). [3] En contra de esa posición el Procurador

---

[3] Además, el acusado descansa y analiza las decisiones en *New York* v. *Belton,* 453 U.S. 454 (1981); *United States* v. *Chadwick,* 433 U.S. 1 (1977); *Whiteley* v. *Warden,* 401 U.S. 560 (1971) y otros casos, para sostener que no se justificaba el registro inmediato y sin orden judicial del equipaje, aun cuando

General argumenta que el tribunal erró al ordenar la supresión y resolver que —aun suponiendo que la intervención de la Policía con el imputado fuera legal y razonable a los fines de registrar su vehículo— debió obtenerse una orden de registro de un magistrado antes de proceder al registro de parte de su equipaje y en específico el bulto.

## II

■ Reafirmamos los pronunciamientos de *Pueblo* v. *Díaz Díaz*, 106 D.P.R. 348 (1977), sobre la determinación de la existencia de causa probable para un arresto basado en confidencia. Ésta es suficiente y válida si se establece la concurrencia de *una o más* de las siguientes circunstancias: (1) que el confidente previamente ha suministrado información correcta; (2) que la confidencia conduce hacia el criminal en términos de tiempo y lugar; (3) que la confidencia ha sido corroborada por observaciones del agente, o por información proveniente de otras fuentes; y (4) que la corroboración se relaciona con actos delictivos cometidos, o en proceso de cometerse.

De las circunstancias enumeradas, por lo menos tres están presentes en el caso de autos. A tal efecto —independientemente de si el confidente Juan Acevedo hubiese provisto previamente datos confiables— de manera precisa informó el nombre de la persona, el lugar, carácter del material delictivo, el medio de transporte, su origen y

hubiese existido causa probable para registrar el vehículo en sí. Aduce que no había circunstancias apremiantes de peligro para la seguridad de los agentes o riesgo de destrucción o desaparición del contenido del equipaje, resultando entonces imperativo la orden judicial.

La dificultad de ese enfoque, como veremos, es que los casos citados no son aplicables al de autos. *La diferencia notable y decisiva que lo distingue es que en ninguno de ellos medió una autorización de los acusados a que se registrara el baúl de un vehículo. Arkansas* v. *Sanders*, 442 U.S. 753 (1975), que presenta una situación bastante parecida, tiene como discrepancia esencial que quien abrió el baúl del taxi en el que iba como pasajero Sanders fue el *chofer*. A Sanders nunca se le solicitó gestión o acto del cual pudiera apreciarse y elaborarse una renuncia.

destino y el tiempo (en horas de la noche del 15 de mayo de 1981). La veracidad de ese aviso comienza a materializarse cuando los agentes que prestan vigilancia en la carretera Núm. 2, ruta de San Juan hacia Aguadilla, ven discurrir el vehículo descrito, escasamente en menos de dos horas de haber comenzado su vigilia, y culmina cuando los agentes adquieren conocimiento exacto de que el conductor del vehículo era la misma persona: Acevedo Escobar. Las observaciones personales de los agentes fueron corroborando el contenido mismo de la confidencia revelada que ciertamente versaba sobre hechos delictivos que estaban ocurriendo en aquel preciso momento, con potencial hacia un futuro inmediato.

■ Concluimos que se cumplen satisfactoriamente y en exceso las normas vigentes para validar la existencia de motivos fundados basado en confidencias para haber detenido el vehículo e intervenir con Acevedo Escobar. Examinemos su otro planteamiento.

### III

Nuestra Constitución, en su Art. II, Sec. 10 reconoce el derecho de la ciudadanía "a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables", salvo autorización judicial, "cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse. Evidencia obtenida en violación de esta sección será inadmisible en los tribunales".

Esta protección constitucional se ha extendido específicamente a vehículos de motor —*Pueblo* v. *Sosa Díaz*, 90 D.P.R. 622 (1964)— bajo el fundamento de que es una restricción meritoria contra la conducta oficial irrazonable en protección del ciudadano particular. *Pueblo* v. *Tribunal*, 91 D.P.R. 19 (1964). El ámbito de la prohibición protege a

todos, tanto al sospechoso o conocido ofensor como al inocente, y se extiende al lugar objeto del registro.

Como todo principio constitucional, el mismo no es absoluto y permite excepciones fundadas en intereses apremiantes. Así, la doctrina jurisprudencial ha evolucionado para permitir los registros contemporáneos a un arresto, en virtud de las siguientes justificaciones fundadas en situaciones perentorias, tales como: (a) ocupar armas y otros objetos que pueden ser utilizados para atacar a un agente del orden público o para que se materialice una fuga; y (b) evitar la destrucción de evidencia, situación que podría ocurrir si las armas o la evidencia se hallan en la persona del acusado o en sus cercanías inmediatas. *Pueblo* v. *Costoso Caballero,* 100 D.P.R. 147 (1971); *Pueblo* v. *Riscard,* 95 D.P.R. 405 (1967); *Pueblo* v. *Sosa Díaz,* supra. Esa misma doctrina admite —debido a la diferencia conceptual y funcional entre una residencia o estructura (uso y ubicación *fijos*) y la movilidad y reglamentación de un vehículo de *motor,* al igual que la fluidez, rapidez y, en ocasiones, situaciones marginales en que ocurren los acontecimientos— la legalidad de un registro del compartimiento de pasajeros de un vehículo de motor —a diferencia del baúl— sin previa orden de allanamiento. El uso por las vías públicas de un automóvil, la facultad en ley de detener para fines de infracción de las leyes de tránsito y características físicas del medio de locomoción, diluyen la razonable expectativa de privacidad con referencia a otros tipos de propiedad. Si el registro es razonable o no dependerá de los hechos y circunstancias especiales de cada caso, "la atmósfera total". *Pueblo* v. *De Jesús Robles,* 92 D.P.R. 345 (1965). Esta excepción a la doctrina exclusionaria fue reconocida en la esfera federal desde *Carrol* v. *United States,* 267 U.S. 132 (1924); *Cady* v. *Dombrowski,* 413 U.S. 433 (1973); y *New York* v. *Belton,* 453 U.S. 454 (1981).

Otra dimensión pertinente a autos, que tiene como resultado legitimar un registro sin orden previa, se configura

en virtud de la facultad que posee el titular de la protección constitucional para renunciarla. *Pueblo* v. *De Jesús Robles*, supra; *Pueblo* v. *Rivera Antuna*, 88 D.P.R. 631 (1963); *Pueblo* v. *Rivera Romero*, 83 D.P.R. 471 (1961); *Pueblo* v. *Seda*, 82 D.P.R. 719 (1961); *Pueblo* v. *Bonanos*, 72 D.P.R. 171 (1951). "Esta renuncia se deduce del acto del acusado de permitir la entrada del agente, o cuando se puede establecer que hubo una invitación implícita de su parte." *Pueblo* v. *Seda*, supra, págs. 728–729. La doctrina solo requiere que esa renuncia sea expresa o implícita, pero voluntaria. [4]

Algunos de los factores determinantes sobre si medió o no una renuncia expresa o tácita son: (1) si ha habido fuerza o violencia; (2) si el registro se realizó después de un arresto; y (3) si se encontraban otras personas presentes. *Pueblo* v. *Seda*, supra, pág. 729. La prueba sobre la renuncia ha de ser clara, demostrativa de que no existió coacción verdadera de clase alguna, directa o indirecta. *Pueblo* v. *Tribunal Superior*, supra.

Varias razones de peso se aducen para fundamentar la alternativa de proceder a un registro luego de obtenerse el consentimiento. Se estima que puede ser percibido como el curso de acción más seguro en términos de minimizar el riesgo de la supresión. Ello tiende a economizar tiempo

---

[4] Véanse, no obstante, *Pagán Hernández* v. *U.P.R.*, 107 D.P.R. 770 (1978); *Pueblo* v. *Arcelay Galán*, 102 D.P.R. 409 (1974); *Pueblo* v. *Morales Romero*, 100 D.P.R. 436 (1972).

En la esfera federal se han establecido distinciones pragmáticas para medir la validez de la renuncia de ciertos derechos constitucionales en función de la naturaleza del derecho en cuestión. La norma estricta fue rechazada por el Tribunal Supremo federal en casos de renuncia de la protección plasmada en la Cuarta Enmienda. *Schneckloth* v. *Bustamonte*, 412 U.S. 218 (1973). Ha sido aplicada a aquellos derechos que garantizan a un acusado las mayores oportunidades posibles para la obtención de un juicio justo —inclusive en sus etapas anteriores— acorde con el modelo constitucional vigente. *Schneckloth* reconoce que existe una gran diferencia entre esos derechos y aquellos protegidos por la Cuarta Enmienda, y que no existe razón alguna para extender el principio. Ese enfoque es persuasivo.

cuando ese factor es esencial. De igual modo se prescinde de cumplir con los requisitos técnicos exigidos para una solicitud y expedición del mandamiento. 2 *La Fave Search and Seizure,* 1978, sec. 8.1, pág. 611. Aún más, se acepta que puede solicitarse el consentimiento sin existir causa probable, ya que provee un mecanismo de pronta exoneración de aquellas personas sobre las cuales se ha sospechado erróneamente. Gardner, *Consent As a Bar to Fourth Amendment Scope—A Critique of a Common Theory,* 71 J. Crim. L. 452 (1980).

## IV

■ A la luz del derecho reseñado no podemos rubricar la tesis central del tribunal de instancia de que el registro fue ilegal e irrazonable. Los hechos ante nos demuestran que se efectuó *con el consentimiento* del acusado Acevedo Escobar. El acto de abrir el baúl él mismo a petición del agente Cintrón, unido al conocimiento de sus derechos por razón de su condición de agente de Rentas Internas, reflejan una conducta clara y solamente compatible con una renuncia a la protección contra la intromisión indebida por parte del Estado. *Parkhurst* v. *State,* 628 P.2d 1369 (1981); *State* v. *Rickman,* 278 S.E.2d 880 (1981); *State* v. *Laughten,* 625 P.2d 327 (1981); *State* v. *Dult,* 394 So.2d 1192 (1981); *United States* v. *Prichard,* 645 F.2d 854 (1981); *State* v. *Donald,* 614 S.W.2d (1980); *State* v. *Smith,* 625 P.2d 132 (1980); *United States* v. *Lance,* 502 F.Supp. 1021 (1980); *State* v. *Whitterback,* 621 P.2d 103 (1980); *Minnifield* v. *State,* 1390 So.2d 1146 (1980); *State* v. *Wilkerson,* 571 P.2d 289 (1977); *People* v. *Hayhurst,* 571 P.2d 721 (1977); *Holl* v. *State,* 238 S.E.2d 912 (1977); *United States* v. *Cage,* 494 F.2d 740 (1974); *United States* v. *Mallory,* 460 F.2d 343 (1972).

No pasamos por alto el argumento relativo a que la presencia de los oficiales del orden público constituyó un elemento de índole intimidatoria. Esa sola circunstancia de

por sí no es suficiente para desvirtuar la validez y voluntariedad del consentimiento. Acevedo Escobar muy bien pudo negarse a abrir el baúl y a que se registrara el maletín. No lo hizo. Presumiendo que hubiese objetado y que entonces los agentes lo hubiesen compelido a abrirlo —bajo amenaza, o luego de utilizar la fuerza física— se impondría como resultado un decreto confirmatorio de la ilegalidad del registro. Sin embargo, hemos de enfatizar las circunstancias especiales que concurren. Se trata de un agente de Rentas Internas, hecho que curiosamente dio a conocer. Por la naturaleza de su trabajo, difícilmente se puede alegar y resolver que desconocía el alcance de sus actuaciones. Tan pronto se identificaron los agentes —como miembros de la Sección de Drogas— vino en conocimiento de cuál era el objetivo de la intervención y búsqueda de éstos. Aun así abrió el baúl sin protestar u objetar. Es razonable presumir que estaba familiarizado con el peculiar olor que expide la marihuana, en particular detectable cuando está en un compartimiento o área cerrada. Tampoco objetó a que se abriera el maletín. Su consentimiento y renuncia al registro del baúl y el maletín no fue condicionado ni limitado.

Finalmente, suponiendo que la renuncia al registro del baúl no se extendiera al equipaje, subsistiría la admisibilidad de la evidencia ocupada. Obsérvese que el agente Cintrón percibió el olor de la marihuana proveniente del maletín, esto es, a través del sentido del olfato pudo apreciar y derivar conocimiento de su existencia. Esa percepción y apreciación guarda analogía y equivalencia funcional a las situaciones en que se aplica la doctrina sobre *prueba a plena vista* según expuesta en *Pueblo* v. *Dolce*, 105 D.P.R. 422 (1976). La única diferencia es el modo en que el objeto es detectado. En uno el conocimiento es producto de la visión y en otro, del sentido del olfato. Aun así, el resultado es el mismo. No existe fundamento para descartar el valor lógico y jurídico de esa percepción.

Por los fundamentos expuestos, *se dictará sentencia en que se revoque la del Tribunal Superior, Sala de Aguadilla. Se devolverán los autos del caso para los trámites ulteriores compatibles con lo expuesto.*