925 So.2d 599 (2006)
STATE of Louisiana
v.
Thomas HUNTER.
No. 2005-KA-0461.
Court of Appeal of Louisiana, Fourth Circuit.
January 19, 2006.
*600 Eddie J. Jordan, Jr., District Attorney of Orleans Parish, Meri M. Hartley, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, for Plaintiff/Appellee.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY III, Judge MICHAEL E. KIRBY).
JAMES F. McKAY, III, Judge.

STATEMENT OF CASE
On May 7, 2004, Thomas Hunter was charged with one count of simple possession of cocaine. At his arraignment on June 3, 2004, he pled not guilty. The court heard and denied his motion to suppress the evidence on August 3, 2004. On September 2, 2004, a six-person jury found Hunter guilty as charged. On September 23, 2004, the court sentenced Hunter to serve four years at hard labor. The court also denied his motions for new trial, for post verdict judgment of acquittal, and to reconsider sentence but granted his motion for appeal. The State subsequently filed a multiple bill. After the matter was continued several times, on May 20, 2005 the court found the defendant to be a second felony offender, vacated his original sentence, and resentenced him as a second offender to serve ten years at hard labor. The court denied his motion to reconsider sentence.

FACTS
At shortly before noon on April 28, 2004, N.O.P.D. Officers Kevin Jackson and Eric Gillard were on proactive patrol on North Villere Street, an area known for drugs and weapons. They pulled half-way across the intersection of Franklin Avenue and stopped at the median to wait for traffic to clear. They observed the defendant Thomas Hunter walking down North Villere toward a convenience store located on the corner. When Hunter saw the police car, he reversed direction and started walking away from the officers. Hunter kept looking over his shoulder at the officers' car. The officers continued across Franklin into the block where Hunter was walking, and Hunter put both hands under his T-shirt. When he removed his hands from under his shirt, his left hand was clenched. As the officers' car neared him, he knelt down as if to tie his shoe, and the *601 officer saw him place whatever was in his clenched left hand under his right shoe.
The officers stopped the car, and Officer Gillard approached Hunter and asked him to come over to the police car to talk to him. Hunter stood back up, and the officers could see that something was under his right foot because the shoe was not flush with the sidewalk. Hunter replied that he was not doing anything, and he refused to move. Officer Gillard took Hunter's arm and moved him toward the car, and Hunter dragged his right foot. The officers noticed a plastic bag under Hunter's foot, and while Officer Gillard moved Hunter to the car, Officer Jackson seized the bag, which contained four smaller bags of a white powdered substance and five individually-wrapped off-white rocks. Believing the substance in the bag was cocaine, the officers arrested Hunter, advised him of his rights, and handcuffed him. A search incident to the arrest netted no other contraband.
Officer Gillard testified that he could see what appeared to be clear plastic sticking out of Hunter's clenched hand, as well as plastic sticking out from under his shoe. Officer Jackson testified he could not see any plastic in either Hunter's hand or under the shoe until Hunter's foot moved. Both officers, however, stated that they saw Hunter place something under his shoe as the officers drove adjacent to him, and they further testified that as Hunter knelt down, he again glanced over his shoulder at the approaching police car.
Criminalist Corey Hall of the N.O.P.D. Crime Lab testified that he tested both the powdered and rock-like substances the officers found in the bag, and these substances tested positive for cocaine.

ERRORS PATENT
A review of the record reveals one possible patent error. The minute entry and transcript of the original sentencing indicate that the trial court denied the appellant's motions for new trial and post-verdict judgment of acquittal after imposing the original sentence in this case.
Generally, a trial court must rule on a motion for new trial or post-verdict judgment of acquittal prior to sentencing. See C.Cr.P. art. 853; State v. Allen, 00-0013 (La.App. 4 Cir. 1/10/01), 777 So.2d 1252. However, any error was cured because the trial court subsequently adjudicated the appellant a second offender and resentenced him as such.
There were no other patent errors.

ASSIGNMENT OF ERROR
By his sole assignment of error, the appellant contends that the trial court erred by denying his motion to suppress the evidence. Specifically, the appellant argues that the officers did not have reasonable suspicion of criminal activity on his part to justify them stopping him.
La.C.Cr.P. art. 215.1 allows a police officer to "stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense, and may demand of him his name, address, and an explanation of his actions." In State v. Thompson, XXXX-XXXX pp. 5-6 (La.4/9/03), 842 So.2d 330, 335, the Supreme Court addressed the standard for determining whether an officer has reasonable suspicion to conduct an investigatory stop:
Reasonable suspicion for an investigatory stop is something less than probable cause and must be determined under the specific facts of each case by whether the officer had sufficient knowledge of particular facts and circumstances to justify the infringement on individual's right to be free from governmental interference. State v. Varnell, 410 So.2d 1108 (1982); State v. Bickham, 404 *602 So.2d 929 (La.1981); State v. Blanton, 400 So.2d 661 (La.1981); State v. Ault, 394 So.2d 1192 (La.1981). . . . In determining whether or not reasonable cause exists to temporarily detain a person, the totality of the circumstances, "the whole picture," must be considered. State v. Belton, 441 So.2d 1195, 1198 (La.1983) (citing United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).)
Here, in addition to the testimony elicited at trial, Officer Jackson testified at the suppression hearing, and his testimony at trial basically tracked that he gave at the suppression hearing. Moreover, Officer Jackson testified at the hearing that when Officer Gillard approached the appellant, the appellant told him that he had just come from the convenience store on the corner. The officers, however, had seen the appellant as he was walking toward the corner, and they observed him turn back and walk away when he saw the police car. Officer Jackson testified that although the appellant's actions in reversing direction and placing his hands under his shirt were somewhat suspicious, the officers suspected that he might be trying to hide drugs when he bent down and placed the object from his clenched left hand under his right shoe.
This court has found reasonable suspicion to support an investigatory stop under circumstances less suspicious than those in this case. In State v. Burke, XXXX-XXXX (La.App. 4 Cir. 2/21/01), 782 So.2d 94, officers were on patrol when they saw a van pull into a gas station and two men get out of the van. Although the men began walking toward the cashier's booth, they reversed direction and began walking down the street as they saw the officer's car. The officers pulled past the station, made a U-turn, and then drove back and stopped the men. While one man denied having been in the van, the other (the defendant) admitted he had been in the van, but he stated that he was looking for his friend who had been the driver. The officers detained the men and took them back to the gas station. They looked inside the van and saw a defeated steering column and a sawed-off shotgun on the floor. This court found that the defendant's and his companion's evasive action upon seeing the officers, coupled with their differing stories, gave the officers reasonable suspicion to detain them and take them back to the van, where they then saw the defeated steering column and the shotgun.
Likewise, in State v. Johnson, 2001-2081 (La.4/26/02), 815 So.2d 809, officers on patrol in a housing project saw the defendant and his friend walking. When the men saw the officers, they began walking quickly away toward a courtyard, and they kept looking over their shoulders as they hurried away. The trial court suppressed evidence seized from the defendant when the officers stopped him, and this court denied the State's writ. State v. Johnson, unpub.XXXX-XXXX (La.App. 4 Cir. 7/3/01). On review, the Supreme Court reversed, finding that the defendant's hurried walk, which the officer described as almost a run, gave the officers reasonable suspicion to stop the defendant and his companion.
In State v. Sylvester, XXXX-XXXX (La.9/20/02), 826 So.2d 1106, officers were patrolling an area where there had been complaints of drug activity. They saw two men sitting in a car, looking down toward the floorboard. The men appeared startled and began fumbling with something as the officers drove up to them. The defendant jumped out of the car with his hand clenched as the officers exited theirs, and the officers told the defendant to get against their car. He complied, and one of the officers ordered him to open his hand. *603 When he did so, a syringe fell out of his hand. The trial court denied his motion to suppress the evidence, but on review this court reversed, finding the officers did not have reasonable suspicion to order the defendant to get against the car and open his clenched hand. State v. Sylvester, XXXX-XXXX (La.App. 4 Cir. 2/7/01), 781 So.2d 616. The State took writs, and the Court reversed, finding the defendant's nervousness, his fumbling in the car, and his exit from the car with a clenched fist gave the officers reasonable suspicion to order him to stand against the car and open his clenched fist.
By contrast, in State v. Phillips, XXXX-XXXX (La.App. 4 Cir. 10/4/00), 774 So.2d 989, police officers on patrol in an area known for drug activity saw a large group of people standing on the sidewalk. As the officers approached, the group disbursed. The officers followed the defendant, who had been one of the group, and the defendant appeared nervous and continually looked at the officers over his shoulder as he walked away. The officers drove up to the defendant and ordered him over to their car. As he complied, he threw down a rock of cocaine. On appeal, this court reversed his conviction, finding that the officers did not have reasonable suspicion to stop him. Likewise, in State v. Ratliff, 98-0094 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, this court found no reasonable suspicion to stop the defendant who was standing with his arms folded and with something in his hand in front of a residence with other people.
Here, the appellant now argues that his actions did not amount to reasonable suspicion of criminal activity. He notes that Off. Jackson testified that he did not suspect that the appellant was engaged in criminal activity when he saw the appellant reverse direction and walk away from the officers, constantly looking back at them. He argues, therefore, that the mere fact that he did not immediately tie his shoe when the officers neared him in their car did not provide reasonable suspicion. He does not mention, however, that Officer Jackson testified that it was these actions, added to their observation that he placed something from his clenched hand under his shoe, which made the officers suspect that he was trying to hide contraband. Officer Gillard did not need reasonable suspicion merely to approach the appellant. The appellant told the officer that he had just come from the corner store, yet the officers knew he had not yet reached the store when he saw them and reversed directions, walking away and looking back at the officers. Given the reputation of the area, the appellant's reversal of direction upon seeing the officers, his constant looking back to see if they were following him, his fumbling under his shirt and emerging with a clenched fist containing a something in plastic, his stooping down to put the object in plastic under his shoe, and his story that he had just come from the store, the officers had reasonable suspicion to detain him.
Once stopped, Officer Gillard ordered the appellant to go over to the police car. When he refused to comply, the officer grabbed his arm and started to move him in that direction. As he did so, his right foot moved, and the officers saw the bag containing what appeared to be cocaine. At that point, they could seize it. See State v. Jones, XXXX-XXXX (La.App. 4 Cir. 6/26/02), 822 So.2d 205; State v. Nogess, 98-0670 (La.App. 4 Cir. 3/3/99), 729 So.2d 132.
In State v. Scull, 93-2360, p. 9 (La.App. 4 Cir. 6/30/94), 639 So.2d 1239, 1245, this court stated: "The trial court is vested with great discretion when ruling on motion to suppress." See also State v. Jones, *604 XXXX-XXXX (La.App. 4 Cir. 11/6/02), 832 So.2d 382; State v. Briley, XXXX-XXXX (La. App. 4 Cir. 10/3/01), 798 So.2d 1191. Here, given the circumstances noted above, the officer had reasonable suspicion to stop the defendant, and once he moved his foot they could see the cocaine inside the bag, which had been under his foot. Therefore, the trial court did not abuse its discretion by denying the appellant's motion to suppress the evidence. This assignment of error has no merit.
Accordingly, we affirm the appellant's conviction and sentence.
AFFIRMED.