991 So.2d 575 (2008)
STATE of Louisiana in the Interest of B.C.
No. 2008-CA-0456.
Court of Appeal of Louisiana, Fourth Circuit.
August 20, 2008.
*576 Hector A. Linares, Juvenile Regional Services, New Orleans, LA, for Appellant, B.C.
Keva Landrum-Johnson, District Attorney, Alyson Graugnard, Assistant District Attorney, New Orleans, LA, for Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY and Judge ROLAND L. BELSOME).
JOAN BERNARD ARMSTRONG, Chief Judge.
The defendant-appellant juvenile, B.C., appeals an adjudication of delinquency for possession of cocaine. He pled not guilty to charges of violating La. R.S. 14:108 relative to possession of cocaine and La. R.S. 14:108, relative to resisting an officer. On May 3, 2008, B.C. appeared for a hearing on the motion to suppress and a trial. The motion to suppress was denied and on the same day, he was found not delinquent of resisting an officer, but was adjudicated delinquent of possession of cocaine. He was sentenced to one year of secure commitment with the Office of Youth Development, suspended, and placed on eighteen months of active probation under the supervision of the Office of Youth Development.
B.C.'s arguments on appeal all arise out of his contention that the evidence should have been suppressed:
In State v. Scull, 93-2360, p. 9 (La.App. 4 Cir. 6/30/94), 639 So.2d 1239, 1245, this court stated: "The trial court is vested *577 with great discretion when ruling on motion to suppress." See also State v. Jones, XXXX-XXXX (La.App. 4 Cir. 11/6/02), 832 So.2d 382.
State v. Hunter, 05-0461, p. 8 (La.App. 4 Cir. 1/19/06), 925 So.2d 599, 604.
The State offered the testimony of Officer Sierra in order to prove that it had the constitutional right to stop B.C. and seize the crack-cocaine evidence used against him. On October 13, 2007, around 11:20 p.m., Officer David Sierra received a radio alert that additional units were needed to apprehend a suspect. Officer Sierra testified that:
A. We [[1]] received a call over the radio that units needed some additional help. They were actually pursuing a suspect.
* * * *
Q. Officer, what location did you arrive at?
A. It was the 2100 block of Chippewa.
* * * *
Q. What did you observe arriving to the location?
A. We arrived to the location, we saw several police officers pursuing. There was an unknown black male running down the street. We were in a vehicle, so we were able to pass up everybody and get behind him. In the 2100 Block of Chippewa as we approached, he looked over his shoulder and took a right through a yard. Can I look at the report?
Officer Sierra lost sight of B.C. in the dark after observing him running into the yard of 2123 Chippewa. They searched for him with flashlights and located him behind a shed in the yard of 2123 Chippewa. Officer Sierra observed B.C. spitting an object into his hand when he shined his flashlight on him. Immediately thereafter, B.C., fled.
Officer Sierra testified that he ran to the objects immediately and recovered crack-cocaine while "my partner gave chase to him." They caught up with B.C. and put handcuffs on him after some resistance.
B.C. contends that the State failed to elicit any testimony regarding the basis for the police pursuit, i.e., B.C. argues that it is not sufficient for Officer Sierra and his partner to stop B.C. in response to a police dispatch call for assistance without any information about whether a crime had been committed or was about to be committed. B.C. contends that the only testimony in this regard is that the officers were responding to a call alerting them to the fact that there were police in need of assistance in pursuit of a suspect. The State has the burden in a motion to suppress hearing and B.C. argues that the record can only support one conclusion: that neither of the officers who initiated the pursuit of B.C., nor Officer Sierra and his partner who subsequently joined the pursuit, had a reasonable, articulable suspicion that B.C. was committing or had committed a crime. Therefore, B.C. contends that the pursuit was illegal and the subsequent search and seizure was the fruit of an illegal stop.
When Officer Sierra testified that he "received a call over the radio that units needed additional help" and that "[t]hey were actually pursuing a suspect" there is only one way to read that testimony, i.e., there is only one reasonable inference to be drawn: That he had received an official *578 police radio call asking for additional help in pursuit of a suspect. By employing the term "suspect" he and we and the trial judge below must necessarily infer that a crime had been or was about to be committed by the "suspect." The term "suspect" in this context cannot be separated from the concept of criminal activity. We may also reasonably infer from the testimony that the call for help was a matter of hot pursuit and that in such emergency situations it is not necessary to provide a detailed description of the suspected activity in order for the pursuing officers to have reasonable suspicion of criminal activity. As Officer Sierra would have had no more first hand knowledge of what the defendant was suspected of doing that warranted the pursuit had he received a more detailed description of the suspected activity over the radio, it is sufficient that he received an official police radio call telling him of criminal activity by using the term "suspect." In other words, as he was in no position to verify any details given to him, it is hard to see how additional details could have made his suspicion any more reasonable:
Police do not have to observe what they know to be criminal behavior before investigating. The requirement is that the officer have a reasonable suspicion of criminal activity. State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988.
State v. Hicks, 98-1231 (La.App. 5 Cir. 3/30/99), 733 So.2d 652, 655. See also, State v. Hollimon, 04-1195, p. 8 (La.App. 5 Cir. 3/29/05), 900 So.2d 999, 1003.
In State v. Johnson, 32,384, pp. 3-4 (La.App. 2 Cir. 9/22/99), 748 So.2d 31, 34, the court found that the police had reasonable cause for an investigatory stop based upon a 911 call reporting what our learned brethren of the Second Circuit referred to as an "altercation." Obviously, when the police were called to the scene they had not witnessed the altercation first hand:
Reasonable cause for an investigatory stop is something less than probable cause, but the officer must be able to articulate knowledge of particular facts, which in conjunction with reasonable inferences drawn therefrom provide reasonable grounds to suspect the detainee of criminal activity. State v. Flowers, 441 So.2d 707 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984); Washington, supra. Nervousness may be one of the factors leading to a finding of reasonable cause to stop under Article 215.1. State v. Willis, 31,561 (La.App.2d Cir.1/20/99), 728 So.2d 493.
Public safety requires some flexibility for police officers to investigate and prevent crime. State v. Wesley, 28,012 (La. App.2d Cir.4/3/96), 671 So.2d 1257. To assess the validity of an investigatory stop, the critical inquiry focuses on the officer's knowledge at the time of the stop. State v. Williams, 421 So.2d 874 (La.1982); Wesley, supra. When a warrant has not been obtained, the state bears the burden of proving the validity of the search at a hearing on the motion to suppress. LSA-C.Cr.P. art. 703; State v. Washington, 501 So.2d 1086 (La. App.2d Cir.1987).
In the present case, the officers responded to a 911 telephone call concerning a fight that had occurred. Upon their arrival at the 1900 block of Clay Street, the officers' information included a report that a fight had occurred and that another confrontation might occur. An altercation can involve several violations of the law, including disturbing the peace (LSA-R.S.14:103), simple battery (LSA-R.S.14:35) or simple assault (LSA-R.S.14:38). The evidence shows that defendant was observed near the *579 location of a reported fight, his appearance indicated he had been involved in an altercation, and he appeared to be nervous in the presence of police. Thus, at the time they encountered defendant, the officers were aware of facts which provided reasonable cause to make an investigatory stop to inquire about the defendant's activities.
State v. Johnson, 32,384, pp. 3-4 (La.App. 2 Cir. 9/22/99), 748 So.2d 31, 34.
Similarly, this Court has described the requirements for an investigatory stop as follows:
An individual may be stopped and questioned by police if the officer has a reasonable suspicion that the person "is committing, has committed, or is about to commit an offense." La.Code Crim. Proc. Ann. art. 215.1. While "reasonable suspicion" is something less than the probable cause needed for an arrest, it must be based upon particular articulable facts and circumstances known to the officer at the time the individual is approached. State v. Smith, 94-1502, p. 4 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082. The officer's past experience, training and common sense may be considered in determining if the inferences drawn from the facts presented were reasonable. State v. Jackson, 26,138 (La.App. 2 Cir. 8/17/94), 641 So.2d 1081, 1084.
State v. Fortier, 99-0244, p. 4 (La.App. 4 Cir. 1/26/00), 756 So.2d 455, 458.
In the instant case, the articulable and objective facts are that Officer Sierra was summoned by police radio to join in the pursuit of a "suspect" and when he arrived he observed the police in hot pursuit just as described in the radio call. We find these objective and articulable facts sufficient to constitute reasonable suspicion for an investigatory stop. Accordingly, we find no abuse of the trial court's great discretion in deciding to deny B.C.'s motion to suppress. Furthermore, as B.C.'s argument that he was adjudicated in the absence of sufficient evidence is contingent upon the suppression of the evidence, we find no merit in that argument.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
BELSOME, J., concurs in the result.
NOTES
[1] When Officer Sierra employs the term "we" in his testimony we must infer that he was not alone in his vehicle although he does not specifically identify who may have been riding with him. In the context of the transcript as a whole it is most likely his "partner", Officer Robert Barerre.