PER CURIAM.
Pursuant to rule 10-7.1(b) of the Rules Regulating The Florida Bar, Randy J. Schwartz, Vice President of Legal Affairs of the Florida Association of Realtors, petitioned The Florida Bar Standing Committee on the Unlicensed Practice of Law (the Standing Committee) for an advisory opinion on the following question:
Whether it constitutes the unlicensed practice of law for a Florida real estate licensee and/or other nonlawyer to draft a residential lease up to one year in duration for another and, if so, whether the practice should be authorized?
We review the proposed advisory opinion[1] pursuant to rule 10-7.1(g) of the Rules Regulating The Florida Bar and article V, section 15 of the Florida Constitution. We also review a petition by The Florida Bar for approval of a form residential lease for a term not to exceed one year pursuant to rule 10-1.1(b) of the Rules Regulating The Florida Bar[2] and article V, section 2(a) of the Florida Constitution.
After a public hearing at which testimony was presented, the Standing Committee issued the advisory opinion under review. In its advisory opinion, the Standing Committee takes the position that this Court should approve a form residential lease for a term of one year or less than can be completed by nonlawyers pursuant to rule 10-1.1(b). The advisory opinion does not directly address the question of whether the drafting of a residential lease of up to one year in duration for another by a non-lawyer constitutes the unlicensed practice of law.
The Standing Committee’s opinion that a Court-approved lease form is warranted is based on the following findings:
Currently, real estate licensees and other nonlawyers are completing residential leases of up to one year in duration. As there is no standard lease now in existence, the leases come from various sources including attorneys or a form company. The terms to be included in the blanks are given by the landlord. Many times the nonlawyer completing the lease form does so because the landlord resides outside of Florida.
Although real estate licensees, other nonlawyers and the public believe that they may complete the leases, the Standing Committee considers this activity the unlicensed practice of law.[3] Keyes Co. v. Dade County Bar Assoc., 46 So.2d 605 (Fla.1950). For this reason, the Florida Association of Realtors advises against completing the lease. However, it was the opinion of the witnesses testifying at the hearing that the public would benefit by the adoption of a Supreme Court approved form residential lease of up to one year in duration which could then be completed by a nonlawyer pursuant to Rule 10-l.l(b), Rules Regulating The Florida Bar. The witnesses felt that a standard form would be superior to many of the forms currently being used. Moreover, reducing the cost of leasing residential property by removing the requirement that an attorney draft the lease would lead to more affordable housing. The Standing Committee agrees with these conclusions.
[[Image here]]
... In the instant matter, the testimony showed that there is no evidence of the public being harmed by real estate licensees drafting leases. This may be due in part to the education real estate licensees receive prior to being licensed and the continuing education which takes place after licensure, as well as licensure itself.
*916 While the public is not being harmed by real estate licensees completing form residential leases of up to one year in duration, the public may receive more protection if the activity is authorized. Should a real estate licensee engage in unethical conduct or in conduct that would amount to malpractice, the parties have recourse with the Florida Real Estate Commission and the Department of Professional Regulation. These agencies have the authority to revoke the licensee’s license while The Florida Bar may only obtain a civil injunction. Fla.Stat. § 475.25; Rule 10-5, Rules Regulating The Florida Bar. The injured party may also seek restitution from the Real Estate Recovery Fund which is similar to the Bar’s Client’s Security Fund. Fla. Stat. § 475.482. However, this remedy is only available if the real estate licensee injures the client while performing duties in which the licensee is authorized to engage. Therefore, as the licensee is currently not authorized to complete the lease form, a client will be unable to seek restitution if harmed. Certainly the public may be adequately protected by the remedies provided by these agencies. Consequently, it is the opinion of the Standing Committee that absent a Supreme Court approved form, real estate licensees should be authorized to complete any form residential lease up to one year in duration as part of a lease transaction.
Along with its advisory opinion, the Standing Committee submitted a form lease that was drafted by a group of real estate attorneys and realtors and was refined by a subcommittee of the Standing Committee. The Florida Association of Realtors supports the proposed advisory opinion as it deals with real estate licensees and urges this Court to adopt a form residential lease that can be completed by nonlawyers pursuant to rule 10-1.1(b) or to allow licensees to complete any form residential lease for a term of up to one year.
The form lease submitted by the Standing Committee also is the subject of a petition filed by the Bar. The Bar’s petition seeks rule 10-1.1(b) approval of seventeen forms, including the residential lease form filed by the Standing Committee. We recently approved sixteen of the forms addressed in the Bar’s petition but reserved ruling on the proposed form residential lease pending oral argument on that form. The Florida Bar: Approval of Forms Pursuant to Rule 10-l.l(h) of the Rules Regulating The Florida Bar, 591 So.2d 594 (Fla.1991). The Real Property, Probate and Trust Law Section of The Florida Bar objected to various features of the proposed lease form and submitted an alternate lease for our consideration.
After oral argument on the form lease, the Simplified Legal Forms Committee, the Standing Committee, and the Real Property, Probate and Trust Law Section were given sixty days in which to resubmit a proposed residential lease form or forms covering the various categories of rental properties. In accordance with that order, a joint proposal that included the following forms was submitted for our approval: 1) Residential Lease for Single Family Home and Duplex (For A Term Not To Exceed One Year); 2) Residential Lease for Apartment or Unit in Multi-Family Rental Housing (Other than a Duplex) Including a Mobile Home (For A Term Not To Exceed One Year); 3) Residential Lease for Unit in Condominium or Cooperative (For A Term Not To Exceed One Year).
Based on our review of the advisory opinion and of the newly submitted form leases, we agree that form residential leases for a term not to exceed one year should be approved for use by nonlawyers pursuant to rule 10-l.l(b). Therefore, we approve that portion of the advisory opinion quoted above. However, we express no opinion as to the correctness of the Standing Committee’s position, stated therein, that it constitutes the unlicensed practice of law for a nonlawyer to complete a residential lease for another and we reiterate that that question was not directly addressed in the advisory opinion. Likewise, this opinion should not be read to address that question.
Accordingly, we approve and authorize the publication of the appended form resi *917 dential leases. The approved forms apply to residential leases of up to one year in duration; they are not intended to cover any other type of lease. They are of a fill-in-the-blank type. In accordance with rule 10-1.1(b), oral communications between the nonlawyer and the person being assisted in completing an approved form lease are “restricted to those communications reasonably necessary to elicit factual information to complete the form.” The approval of these forms in no way authorizes a nonlaw-yer to give legal advice, to draft leases or to prepare addenda to an approved lease form. Consequently, if a question arises as to the interpretation of a provision in the lease, the enforcement of the lease, or any other matter requiring legal advice, including the statutory rights or obligations of the landlord or tenant, a nonlawyer should advise the party seeking such advice to consult an attorney. However, to the extent allowed by the landlord, matters of negotiation regarding the inclusion of provisions in the lease may be conducted by a nonlawyer.
The forms approved by this Court shall be identified as such on the face of the forms which shall read: “Approved for use under rule 10-1.1(b) of the Rules Regulating The Florida Bar.”
It is so ordered.
BARKETT, C.J., and OVERTON, McDonald, shaw, grimes, kogan and HARDING, JJ., concur.
THE FORMS APPROVED BY THIS COURT ARE EFFECTIVE IMMEDIATELY.
*918 APPENDIX
RESIDENTIAL LEASE FOR SINGLE FAMILY HOME AND DUPLEX (FOR A TERM NOT TO EXCEED ONE YEAR)
(Not To Be Used For Commercial, Agricultural, or Other Residential Property)
[[Image here]]
*919 [[Image here]]
*920 2. Landlord/Tenant (circle one) will comply with applicable building, housing, and health codes relating to the Property.
3. If there are no applicable building, housing, or health codes, the person designated below agrees to maintain and repair the following items in a manner capable of resisting normal forces and loads. (Fill in each blank space with Landlord or Tenant to show who will take care of the items noted. If an item is left blank, Landlord will be responsible for the item.)
_ Roofs
_ Porches
_ Windows
_ Exterior walls
_ Screens
_ Foundations
_ Floors
_ Structural components
_ Steps
_ Plumbing (kept in reasonable working order)
The Landlord shall/shall not (circle one) be required to install working smoke detectors on the Premises.
B. Elective Maintenance. Fill in each blank space in this section with Landlord or Tenant to show who will take care of the item noted. If a space is left blank, Landlord will be required to take care of that item.
_ Smoke detectors
_ Extermination of rats, mice, roaches, ants, wood-destroying organisms, and bedbugs
_ Locks and keys
_ Clean and safe condition of outside areas
_ Garbage removal and outside garbage receptacles
_ Running water
_ Hot water
_ Lawn
_ Heat
_ Air conditioning
_ Furniture
_ Appliances
_ Fixtures
_ Pool (including filters, machinery, and equipment)
_ Heating and air conditioning filters
_ Other: _
Tenant’s responsibility, if any, indicated above, shall/shall not (circle one) include major maintenance or major replacement of equipment.
Landlord’s responsibility, if any, indicated above, shall/shall not (circle one) include major maintenance or major replacement of equipment.
Major maintenance or major replacement means a repair or replacement that costs more than $_
Tenant shall be required to vacate the Premises on 7 days’ written notice, if necessary, for extermination pursuant to this subparagraph. When vacation of the Premises is required for extermination, Landlord shall not be liable for damages but shall abate the rent.
Nothing in this section makes Landlord responsible for any condition created or caused by the negligent or wrongful act or omission of Tenant, any member of Tenant’s family, or any other person on the Premises with Tenant’s consent.
C. Tenant’s Required Maintenance. At all times during the Lease Term, Tenant shall:
1. comply with all obligations imposed upon tenants by applicable provisions of building, housing, and health codes;
2. keep the Premises clean and sanitary;
*921 3. remove all garbage from the dwelling unit in a clean and sanitary manner;
4. keep all plumbing fixtures in the dwelling unit clean, sanitary, and in repair; and
5. use and operate in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances, including elevators.
IX. UTILITIES. Tenant shall pay all charges for hook-up, connection, and deposit for providing all utilities and utility services to the Premises during this lease except
_, which Landlord agrees to provide at Landlord’s expense. (Specify
any utilities to be provided and paid for by Landlord such as water, sewer, oil, gas, electricity, telephone, garbage removal, etc.).
X. LANDLORD’S ACCESS TO PREMISES. Landlord or Landlord’s Agent may enter the Premises in the following circumstances:
A. At any time for the protection or preservation of the Premises.
B. After reasonable notice to Tenant at reasonable times for the purpose of repairing the Premises.
C. To inspect the Premises; make necessary or agreed-upon repairs, decorations, alterations, or improvements; supply agreed services; or exhibit the Premises to prospective or actual purchasers, mortgagees, tenants, workers, or contractors under any of the following circumstances:
1. with Tenant’s consent;
2. in case of emergency;
3. when Tenant unreasonably withholds consent; or
4. if Tenant is absent from the Premises for a period of at least one-half a Rental Installment Period. (If the rent is current and Tenant notifies Landlord of an intended absence, then Landlord may enter only with Tenant’s consent or for the protection or preservation of the Premises.)
XI. PROHIBITED ACTS BY LANDLORD.
A. Landlord cannot cause, directly or indirectly, the termination or unreasonable interruption of any utility service furnished to Tenant, including, but not limited to, water, heat, light, electricity, gas, elevator, garbage collection, or refrigeration (whether or not the utility service is under the control of, or payment is made by, Landlord).
B. Landlord cannot prevent Tenant’s access to the Premises by any means, including, but not limited to, changing the locks or using any bootlock or similar device.
C. Landlord cannot remove the outside doors, locks, roof, walls, or windows of the Premises except for purposes of maintenance, repair, or replacement. Landlord cannot remove Tenant’s personal property from the Premises unless the action is taken after surrender, abandonment, or a lawful eviction. If provided in a written agreement separate from the Lease, upon surrender or abandonment by Tenant, Landlord shall not be liable or responsible for storage or disposition of Tenant’s personal property. (For the purposes of this section, abandonment means Tenant is absent from the Premises for at least one-half a Rental Installment Period without paying rent or giving Landlord reasonable notice of Tenant’s absence.)
XII. CASUALTY DAMAGE. If the Premises are damaged or destroyed other than by wrongful or negligent acts of Tenant or persons on the Premises with Tenant’s consent, so that the use of the Premises is substantially impaired, Tenant may terminate the Lease within 30 days after the damage or destruction and Tenant will immediately vacate the premises. If Tenant vacates, Tenant is not liable for rent that would have been due after the date of termination. Tenant may vacate the part of the Premises rendered unusable by the damage or destruction, in which case Tenant’s liability for rent shall be reduced by the fair rental value of the part of the Premises that was damaged or destroyed.
XIII. DEFAULT.
A. Landlord’s Default. Except as noted below, Landlord will be in default if Landlord fails to comply with Landlord’s required maintenance obligations under Section VIII(A) or fails to comply with other material provisions of the Lease and such *922 failure continues for more than 7 days after Tenant delivers a written notice to Landlord that tells Landlord how Landlord has violated the Lease.
If Landlord’s failure to comply is due to causes beyond the Landlord’s control and if Landlord has made, and continues to make, every reasonable effort to correct the problem, the Lease may be altered by the parties, as follows:
1. If Landlord’s failure to comply makes the Premises uninhabitable and Tenant vacates, Tenant shall not be liable for rent during the period the Premises remains uninhabitable.
2. If Landlord’s failure to comply does not make the Premises uninhabitable and Tenant continues to occupy the Premises, the rent for the period of noncompliance will be reduced by an amount in proportion to the loss of rental value caused by the noncompliance.
B. Tenant’s Default. Tenant will be in default if any of the following occur:
1. Tenant fails to pay rent when due and the default continues for 3 days, excluding Saturday, Sunday, and legal holidays, after delivery of written demand by Landlord for payment of the rent or possession of the Premises.
2. Tenant fails to perform its obligations under the Lease, and the failure is such that Tenant should not be given an opportunity to correct it or the failure occurs within 12 months of a written warning by Landlord of a similar failure. Examples of such failures which do not require an opportunity to correct include, but are not limited to, destruction, damage, or misuse of Landlord’s or other Tenant’s property by an intentional act or a subsequent or continued unreasonable disturbance.
3. Except as provided above, Tenant fails to perform any other obligation under the Lease and the default continues for more than 7 days after delivery of written notice to Tenant from Landlord specifying the default.
C. Waiver of Default. If Landlord accepts rent knowing of Tenant’s default or accepts performance by Tenant of any provision of the Lease different from the performance required by the Lease, or if Tenant pays rent knowing of Landlord’s default or accepts performance by Landlord of any provision of the Lease different from the performance required by the Lease, the party accepting the rent or performance or making the payment shall not have the right to terminate the Lease or to bring a lawsuit for that default, but may enforce any later default.
XIV. REMEDIES AND DEFENSES.
A. Tenant’s Remedies.
1. If Landlord has defaulted under the Lease and if Tenant has given Landlord a written notice describing the default and Tenant’s intention to withhold rent if the default is not corrected within 7 days, Tenant may withhold an amount of rent equal to the loss in rental value caused by the default. If Tenant’s notice advises Landlord that Tenant intends to terminate the lease if the default is not cured within 7 days and the default is not cured within the 7 days, Tenant may terminate the Lease.
2. If Tenant has given the notice referred to in subparagraph (1) above, and if Landlord has not corrected the default within 7 days, Tenant may, in addition to withholding the applicable amount of rent, file a lawsuit in county court to require Landlord to correct the default and for damages.
3. If Landlord’s default makes the Premises uninhabitable, and if Tenant has given Landlord a notice describing the default and informing Landlord that Tenant intends to terminate the Lease, then if Landlord does not cure the default within the 7-day period, Tenant may terminate the Lease at the end of the 7 days.
4. If Landlord violates the provisions of section XI, Landlord shall be liable to Tenant for actual and consequential damages or 3 months’ rent, whichever is greater, for each violation.
B. Landlord’s Remedies.
*923 1. If Tenant remains on the Premises after expiration or termination of the Lease without Landlord’s permission, Landlord may recover possession of the Premises in the manner provided for by law. Landlord also may recover double rent for the period during which Tenant refuses to vacate the Premises.
2. If Tenant defaults under the Lease by failing to pay rent, as set forth in section XIII(B)(1), Landlord may terminate Tenant’s rights under the Lease and Tenant shall vacate the Premises immediately. If Tenant defaults under the Lease for any other reason, as set forth in sections XIII(B)(2) or (3) above, Landlord may terminate Tenant’s rights under the Lease and Tenant shall vacate the Premises within 7 days of delivery of the notice of termination.
3. If Tenant fails to cure a default within the time specified in the notice to Tenant, Landlord may recover possession of the Premises as provided by law.
4. Landlord shall not recover possession of the Premises except:
a. in a lawsuit for possession;
b. when Tenant has surrendered possession of the Premises to Landlord; or
c. when Tenant has abandoned the Premises. Absent actual knowledge of abandonment, the Premises shall be considered abandoned if Tenant is absent from them for at least one-half a Rental Installment Period, the rent is not current, and Tenant has not notified Landlord, in writing, of an intended absence.
5. If Tenant has defaulted under the Lease and Landlord has obtained a writ of possession, if Tenant has surrendered possession of the Premises to Landlord, or if Tenant has abandoned the Premises, Landlord may:
a. treat the Lease as terminated, retake possession for Landlord’s own account, and any further liability of Tenant will be ended;
b. retake possession of the Premises for Tenant’s account. Tenant will remain liable for the difference between rent agreed to be paid under the Lease and rent Landlord is able to recover in good faith from a new tenant; or
c. do nothing, and Tenant will be liable for the rent as it comes due.
6. If Landlord retakes possession of the Premises for Tenant’s account, Landlord must make a good faith effort to re-lease the Premises. Any rent received by Landlord as a result of the new lease shall be deducted from the rent due from Tenant. For purposes of this section, “good faith” in trying to re-lease the Premises means that Landlord shall use at least the same efforts to re-lease the Premises as were used in the initial rental or at least the same efforts as Landlord uses in attempting to lease other similar property. It does not require Landlord to give a preference in leasing the Premises over other vacant properties that Landlord owns or has the responsibility to rent.
C. Other Remedies. Each party also may have other remedies available at law or in equity.
D. Defenses. In a lawsuit by Landlord for possession of the Premises based upon nonpayment of rent or in a lawsuit by Landlord seeking to obtain unpaid rent, Tenant may assert as a defense Landlord’s failure to perform required maintenance, as set forth in Section VIII(A) above. Landlord’s failure to provide elective maintenance, as set forth in Section VIII(B) above, shall not be a defense to any lawsuit by Landlord for possession of the Premises unless otherwise provided by the Lease or applicable law. Tenant may also raise any other defense, whether legal or equitable, that Tenant may have, including the defense or retaliatory conduct.
E. Payment of Rent to Court. In any lawsuit by Landlord for possession of the Premises, if Tenant raises any defense other than payment, Tenant must pay into the registry of the court the past due rent set forth in Landlord’s complaint, or an amount determined by the court, and the rent which comes due during the lawsuit, as it comes due. Failure of Tenant to pay the rent into the registry of the court will be a waiver of Tenant’s defenses other than payment.
*924 F.Attorney’s Fees. In any lawsuit brought to enforce the Lease or under applicable law, the party who wins may recover its reasonable court costs and attorneys’ fees from the party who loses.
* XV. ASSIGNMENT AND SUBLEASING. Tenant may/may not (circle one) assign the Lease or sublease all or any part of the Premises without first obtaining Landlord’s written approval and consent to the assignment or sublease.
* XVI. RISK OF LOSS. Landlord shall/shall not (circle one) be liable for any loss by reason of damage, theft, or otherwise to the contents, belongings and personal effects of the Tenant, or Tenant’s family, agents, employees, guests, or visitors located in or about the Premises, or for damage or injury to Tenant or Tenant’s family, agents, employees, guests or visitors. Landlord shall not be liable if such damage, theft, or loss is caused by Tenant, Tenant’s family, agents, employees, guests, or visitors. Nothing contained in this provision shall relieve Landlord or Tenant from responsibility for loss, damage, or injury caused by its own negligence or willful conduct.
XVII. SUBORDINATION. The Lease is subordinate to the lien of any mortgage encumbering the fee title to the Premises from time to time.
XVIII. LIENS. Tenant shall not have the right or authority to encumber the Premises or to permit any person to claim or assert any lien for the improvement or repair of the Premises made by Tenant. Tenant shall notify all parties performing work on the Premises at Tenant’s request that the Lease does not allow any liens to attach to Landlord’s interest.
* XIX. APPROVAL CONTINGENCY. The Lease is/is not (circle one) conditioned upon approval of Tenant by the association that governs the Premises.
XX. RENEWAL/EXTENSION. The Lease can be renewed or extended only by a written agreement signed by both Landlord and Tenant, but no renewal may extend the term to a date more than 1 year after the lease begins. A new lease is required for each year.
XXI. MISCELLANEOUS.
A. Time is of the essence of the Lease.
B. The Lease shall be binding upon and for the benefit of the heirs, personal representatives, successors, and permitted assigns of Landlord and Tenant, subject to the requirements specifically mentioned in the Lease. Whenever used, the singular number shall include the plural or singular and the use of any gender shall include all appropriate genders.
C. The agreements contained in the Lease set forth the complete understanding of the parties and may not be changed or terminated orally.
D. No agreement to accept surrender of the Premises from Tenant will be valid unless in writing and signed by Landlord.
E. All questions concerning the meaning, execution, construction, effect, validity, and enforcement of the Lease shall be determined pursuant to the laws of Florida.
F. The place for filing any suits or other proceedings with respect to the Lease shall be the county in which the Premises is located.
G. Landlord and Tenant will use good faith in performing their obligations under the Lease.
H. As required by law, Landlord makes the following disclosure:
“RADON GAS.” Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.
*925 [[Image here]]
*926 [[Image here]]
VI. SECURITY DEPOSITS AND ADVANCE RENT. If Tenant has paid a security deposit or advance rent the following provisions apply:
A. Landlord shall hold the money in a separate interest-bearing or noninterest-bearing account in a Florida banking institution for the benefit of Tenant. If Landlord deposits the money in an interest-bearing account, Landlord must pay Tenant interest of at least 75% of the annualized average interest paid by the bank or 5% per year simple interest, whichever Landlord chooses. Landlord cannot mix such money with any other funds of Landlord or pledge, mortgage, or make any other use of such money until the money is actually due to Landlord; or
B. Landlord must post a surety bond in the manner allowed by law. If Landlord posts the bond, Landlord shall pay Tenant 5% interest per year.
At the end of the Lease, Landlord will pay Tenant, or credit against rent, the interest due to Tenant. No interest will be due Tenant if Tenant wrongfully terminates the Lease before the end of the Lease Term.
If Landlord rents 5 or more dwelling units, then within 30 days of Tenant’s payment of the advance rent or any security deposit, Landlord must notify Tenant in writing of
*927 [[Image here]]
*928 _ Heat
_ Air conditioning
_ Furniture
_ Appliances
_ Fixtures
_ Pool (including filters, machinery, and equipment)
_ Heating and air conditioning filters
_ Other: _
Tenant’s responsibility, if any, indicated above, shall/shall not (circle one) include major maintenance or major replacement of equipment.
Landlord shall be responsible for major maintenance or major replacement of equipment, except for equipment for which Tenant has accepted responsibility for major maintenance or major replacement in the previous paragraph.
Major maintenance or major replacement means a repair or replacement that costs more than $_
Tenant shall be required to vacate the Premises on 7 days’ written notice, if necessary, for extermination pursuant to this subparagraph. When vacation of the Premises is required for extermination, Landlord shall not be liable for damages but shall abate the rent.
Nothing in this section makes Landlord responsible for any condition created or caused by the negligent or wrongful act or omission of Tenant, any member of its family, or any other person on the Premises with Tenant’s consent.
C. Tenant’s Required Maintenance. At all times during the Lease Term, Tenant shall:
1. comply with all obligations imposed upon tenants by applicable provisions of building, housing, and health codes;
2. keep the Premises clean and sanitary;
3. remove all garbage from the dwelling unit in a clean and sanitary manner;
4. keep all plumbing fixtures in the dwelling unit clean, sanitary, and in repair; and
5. use and operate in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances, including elevators.
X. UTILITIES. Tenant shall pay all charges for hook-up, connection, and deposit for providing all utilities and utility services to the Premises during this lease except
_, which Landlord agrees to provide at Landlord’s expense. (Specify
any utilities to be provided and paid for by Landlord such as water, sewer, oil, gas, electricity, telephone, garbage removal, etc.).
XI. LANDLORD’S ACCESS TO PREMISES. Landlord or Landlord’s Agent may enter the Premises in the following circumstances:
A. At any time for the protection or preservation of the Premises.
B. After reasonable notice to Tenant at reasonable times for the purpose of repairing the Premises.
C. To inspect the Premises; make necessary or agreed-upon repairs, decorations, alterations, or improvements; supply agreed services; or exhibit the Premises to prospective or actual purchasers, mortgagees, tenants, workers, or contractors under any of the following circumstances:
1. with Tenant’s consent;
2. in case of emergency;
3. when Tenant unreasonably withholds consent; or
4. if Tenant is absent from the Premises for a period of at least one-half a Rental Installment Period. (If the rent is current and Tenant notifies Landlord of an intended absence, then Landlord may enter only with Tenant’s consent or for the protection or preservation of the Premises.)
XII. PROHIBITED ACTS BY LANDLORD.
A. Landlord cannot cause, directly or indirectly, the termination or unreasonable interruption of any utility service furnished to Tenant, including, but not limited to, *929 water, heat, light, electricity, gas, elevator, garbage collection, or refrigeration (whether or not the utility service is under the control of, or payment is made by, Landlord).
B. Landlord cannot prevent Tenant’s access to the Premises by any means, including, but not limited to, changing the locks or using any bootlock or similar device.
C. Landlord cannot remove the outside doors, locks, roof, walls, or windows of the Premises except for purposes of maintenance, repair, or replacement. Landlord cannot remove Tenant’s personal property from the Premises unless the action is taken after surrender, abandonment, or a lawful eviction. If provided in a written agreement separate from the Lease, upon surrender or abandonment by Tenant, Landlord shall not be liable or responsible for storage or disposition of Tenant’s personal property. (For the purposes of this section, abandonment means Tenant is absent from the Premises for at least one-half a Rental Installment Period without paying rent or giving Landlord reasonable notice of Tenant’s absence.)
XIII. CASUALTY DAMAGE. If the Premises are damaged or destroyed other than by wrongful or negligent acts of Tenant or persons on the Premises with Tenant’s consent, so that the use of the Premises is substantially impaired, Tenant may terminate the Lease within 30 days after the damage or destruction and Tenant will immediately vacate the premises. If Tenant vacates, Tenant is not liable for rent that would have been due after the date of termination. Tenant may vacate the part of the Premises rendered unusable by the damage or destruction, in which case Tenant’s liability for rent shall be reduced by the fair rental value of the part of the Premises that was damaged or destroyed.
XIV. DEFAULT.
A. Landlord’s Default. Except as noted below, Landlord will be in default if Landlord fails to comply with Landlord’s required maintenance obligations under Section IX(A) or fails to comply with other material provisions of the Lease and such failure continues for more than 7 days after Tenant delivers a written notice to Landlord that tells Landlord how Landlord has violated the Lease.
If Landlord’s failure to comply is due to causes beyond the Landlord’s control and if Landlord has made, and continues to make, every reasonable effort to correct the problem, the Lease may be altered by the parties, as follows:
1. If Landlord’s failure to comply makes the Premises uninhabitable and Tenant vacates, Tenant shall not be liable for rent during the period the Premises remains uninhabitable.
2. If Landlord’s failure to comply does not make the Premises uninhabitable and Tenant continues to occupy the Premises, the rent for the period of noncompliance will be reduced by an amount in proportion to the loss of rental value caused by the noncompliance.
B. Tenant’s Default. Tenant will be in default if any of the following occur:
1. Tenant fails to pay rent when due and the default continues for 3 days, excluding Saturday, Sunday, and legal holidays, after delivery of written demand by Landlord for payment of the rent or possession of the Premises.
2. Tenant fails to perform its obligations under the Lease, and the failure is such that Tenant should not be given an opportunity to correct it or the failure occurs within 12 months of a written warning by Landlord of a similar failure. Examples of such failures which do not require an opportunity to correct include, but are not limited to, destruction, damage, or misuse of Landlord’s or other Tenant’s property by an intentional act or a subsequent or continued unreasonable disturbance.
3. Except as provided above, Tenant fails to perform any other obligation under the Lease and the default continues for more than 7 days after delivery of written notice to Tenant from Landlord specifying the default.
C. Waiver of Default. If Landlord accepts rent knowing of Tenant’s default or accepts performance by Tenant of any provision of the Lease different from the performance required by the Lease, or if Tenant pays rent knowing of Landlord’s default or accepts performance by Landlord of any provision of the Lease different from the performance required by the Lease, the party accepting the rent or performance or making the payment shall not have the right to terminate the Lease or to bring a lawsuit for that default, but may enforce any later default.
*930 XV. REMEDIES AND DEFENSES.
A. Tenant's Remedies.
1. If Landlord has defaulted under the Lease and if Tenant has given Landlord a written notice describing the default and Tenant’s intention to withhold rent if the default is not corrected within 7 days, Tenant may withhold an amount of rent equal to the loss in rental value caused by the default. If Tenant's notice advises Landlord that Tenant intends to terminate the lease if the default is not cured within 7 days and the default is not cured within the 7 days, Tenant may terminate the Lease.
2. If Tenant has given the notice referred to in subparagraph (1) above, and if Landlord has not corrected the default within 7 days, Tenant may, in addition to withholding the applicable amount of rent, file a lawsuit in county court to require Landlord to correct the default and for damages.
3. If Landlord’s default makes the Premises uninhabitable, and if Tenant has given Landlord a notice describing the default and informing Landlord that Tenant intends to terminate the Lease, then if Landlord does not cure the default within the 7-day period, Tenant may terminate the Lease at the end of the 7 days.
4. If Landlord violates the provisions of section XII, Landlord shall be liable to Tenant for actual and consequential damages or 3 months’ rent, whichever is greater, for each violation.
B. Landlord’s Remedies.
1. If Tenant remains on the Premises after expiration or termination of the Lease without Landlord’s permission, Landlord may recover possession of the Premises in the manner provided for by law. Landlord also may recover double rent for the period during which Tenant refuses to vacate the Premises.
2. If Tenant defaults under the Lease by failing to pay rent, as set forth in section XIV(B)(1), Landlord may terminate Tenant’s rights under the Lease and Tenant shall vacate the Premises immediately. If Tenant defaults under the Lease for any other reason, as set forth in sections XIV(B)(2) or (3) above, Landlord may terminate Tenant's rights under the Lease and Tenant shall vacate the Premises within 7 days of delivery of the notice of termination.
3. If Tenant fails to cure a default within the time specified in the notice to Tenant, Landlord may recover possession of the Premises as provided by law.
4. Landlord shall not recover possession of the Premises except:
a. in a lawsuit for possession;
b. when Tenant has surrendered possession of the Premises to Landlord; or
c. when Tenant has abandoned the Premises. Absent actual knowledge of abandonment, the Premises shall be considered abandoned if Tenant is absent from them for at least one-half a Rental Installment Period, the rent is not current, and Tenant has not notified Landlord, in writing, of an intended absence.
5. If Tenant has defaulted under the Lease and Landlord has obtained a writ of possession, if Tenant has surrendered possession of the Premises to Landlord, or if Tenant has abandoned the Premises, Landlord may:
a. treat the Lease as terminated, retake possession for Landlord’s own account, and any further liability of Tenant will be ended;
b. retake possession of the Premises for Tenant’s account. Tenant will remain liable for the difference between rent agreed to be paid under the Lease and rent Landlord is able to recover in good faith from a new tenant; or
c. do nothing, and Tenant will be liable for the rent as it comes due.
6. If Landlord retakes possession of the Premises for Tenant’s account, Landlord must make a good faith effort to re-lease the Premises. Any rent received by Landlord as a result of the new lease shall be deducted from the rent due from *931 Tenant. For purposes of this section, “good faith” in trying to release the Premises means that Landlord shall use at least the same efforts to re-lease the Premises as were used in the initial rental or at least the same efforts as Landlord uses in attempting to lease other similar property. It does not require Landlord to give a preference in leasing the Premises over other vacant properties that Landlord owns or has the responsibility to rent.
C. Other Remedies. Each party also may have other remedies available at law or in equity.
D. Defenses. In a lawsuit by Landlord for possession of the Premises based upon nonpayment of rent or in a lawsuit by Landlord seeking to obtain unpaid rent, Tenant may assert as a defense Landlord’s failure to perform required maintenance, as set forth in Section VIII(A) above. Landlord’s failure to provide elective maintenance, as set forth in Section VIII(B) above, shall not be a defense to any lawsuit by Landlord for possession of the Premises unless otherwise provided by the Lease or applicable law. Tenant may also raise any other defense, whether legal or equitable, that Tenant may have, including the defense or retaliatory conduct.
E. Payment of Rent to Court. In any lawsuit by Landlord for possession of the Premises, if Tenant raises any defense other than payment, Tenant must pay into the registry of the court the past due rent set forth in Landlord’s complaint, or an amount determined by the court, and the rent which comes due during the lawsuit, as it comes due. Failure of Tenant to pay the rent into the registry of the court will be a waiver of Tenant’s defenses other than payment.
F. Attorney’s Fees. In any lawsuit brought to enforce the Lease or under applicable law, the party who wins may recover its reasonable court costs and attorneys’ fees from the party who loses.
* XVI. ASSIGNMENT AND SUBLEASING. Tenant may/may not (circle one) assign the Lease or sublease all or any part of the Premises without first obtaining Landlord’s written approval and consent to the assignment or sublease.
* XVII. RISK OF LOSS. Landlord shall/shall not (circle one) be liable for any loss by reason of damage, theft, or otherwise to the contents, belongings, and personal effects of the Tenant, or Tenant’s family, agents, employees, guests, or visitors located in or about the Premises, or for damage or injury to Tenant or Tenant’s family, agents, employees, guests, or visitors. Landlord shall not be liable if such damage, theft, or loss is caused by Tenant, Tenant’s family, agents, employees, guests, or visitors. Nothing contained in this provision shall relieve Landlord or Tenant from responsibility for loss, damage, or injury caused by its own negligence or willful conduct.
XVIII. SUBORDINATION. The Lease is subordinate to the lien of any mortgage encumbering the fee title to the Premises from time to time.
XIX. LIENS. Tenant shall not have the right or authority to encumber the Premises or to permit any person to claim or assert any lien for the improvement or repair of the Premises made by Tenant. Tenant shall notify all parties performing work on the Premises at Tenant’s request that the Lease does not allow any liens to attach to Landlord’s interest.
* XX. APPROVAL CONTINGENCY. The Lease is/is not (circle one) conditioned upon approval of Tenant by the association that governs the Premises.
XXI. RENEWAL/EXTENSION. The Lease can be renewed or extended only by a written agreement signed by both Landlord and Tenant, but no renewal may extend the term to a date more than 1 year after the lease begins. A new lease is required for each year.
XXII. MISCELLANEOUS.
A. Time is of the essence of the Lease.
B. The Lease shall be binding upon and for the benefit of the heirs, personal representatives, successors, and permitted assigns of Landlord and Tenant, subject to the requirements specifically mentioned in the Lease. Whenever used, the singular number shall include the plural or singular and the use of any gender shall include all appropriate genders.
*932 C. The agreements contained in the Lease set forth the complete understanding of the parties and may not be changed or terminated orally.
D. No agreement to accept surrender of the Premises from Tenant will be valid unless in writing and signed by Landlord.
E. All questions concerning the meaning, execution, construction, effect, validity, and enforcement of the Lease shall be determined pursuant to the laws of Florida.
F. The place for filing any suits or other proceedings with respect to the Lease shall be the county in which the Premises is located.
G. Landlord and Tenant will use good faith in performing their obligations under the Lease.
H. As required by law, Landlord makes the following disclosure:
“RADON GAS.” Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.
The Lease has been executed by the parties on the dates indicated below:
[[Image here]]
*933 RESIDENTIAL LEASE FOR UNIT IN CONDOMINIUM OR COOPERATIVE (FOR A TERM NOT TO EXCEED ONE YEAR)
(Not To Be Used For Commercial, Agricultural, or Other Residential Property) WARNING: IT IS VERY IMPORTANT TO READ ALL OF THE LEASE CAREFULLY. THE LEASE IMPOSES IMPORTANT LEGAL OBLIGATIONS.
AN ASTERISK (*) OR A BLANK SPACE (_) INDICATES A PROVISION
WHERE A CHOICE OR A DECISION MUST BE MADE BY THE PARTIES.
NO CHANGES OR ADDITIONS TO THIS FORM MAY BE MADE UNLESS A LAWYER IS CONSULTED.
[[Image here]]
*934 _ a security deposit of $_to be paid upon signing the Lease.
_ advance rent in the amount of $_ for the Rental Installment Periods of_to be paid upon signing the Lease.
_ a pet deposit in the amount of $_to be paid upon signing the Lease.
_ a late charge in the amount of $_for each Lease Payment made more than_number of days after the date it is due.
_ a bad check fee in the amount of $_(not to exceed $20, or 5% of the Lease Payment, whichever is greater) if Tenant makes any Lease Payment with a bad check. If Tenant makes any Lease Payment with a bad check, Landlord can require Tenant to pay all future Lease Payments in cash or by money order.
VI. SECURITY DEPOSITS AND ADVANCE RENT. If Tenant has paid a security deposit or advance rent the following provisions apply:
A. Landlord shall hold the money in a separate interest-bearing or noninterest-bearing account in a Florida banking institution for the benefit of Tenant. If Landlord deposits the money in an interest-bearing account, Landlord must pay Tenant interest of at least 75% of the annualized average interest paid by the bank or 5% per year simple interest, whichever Landlord chooses. Landlord cannot mix such money with any other funds of Landlord or pledge, mortgage, or make any other use of such money until the money is actually due to Landlord; or
B. Landlord must post a surety bond in the manner allowed by law. If Landlord posts the bond, Landlord shall pay Tenant 5% interest per year.
At the end of the Lease, Landlord will pay Tenant, or credit against rent, the interest due to Tenant. No interest will be due Tenant if Tenant wrongfully terminates the Lease before the end of the Lease Term.
If Landlord rents five or more dwelling units, then within 30 days of Tenant’s payment of the advance rent or any security deposit, Landlord must notify Tenant in writing of the manner in which Landlord is holding such money, the interest rate, if any, that Tenant will receive, and when such payments will be made.
VII. NOTICES._is Landlord’s Agent. All notices to Landlord
[name]
and all Lease Payments must be sent to Landlord’s agent at-,
[address]
unless Landlord gives Tenant written notice of a change. Landlord’s Agent may perform inspections on behalf of Landlord. All notices to Landlord shall be given by certified mail, return receipt requested, or by hand delivery to Landlord or Landlord’s Agent.
Any notice to Tenant shall be given by certified mail, return receipt requested, or delivered to Tenant at the Premises. If Tenant is absent from the Premises, a notice to Tenant may be given by leaving a copy of the notice at the Premises.
VIII. USE OF PREMISES. Tenant shall use the Premises only for residential purposes. Tenant also shall obey, and require anyone on the Premises to obey, all laws and any restrictions that apply to the Premises. Landlord will give Tenant notice of any restrictions that apply to the Premises.
The Premises are located in a condominium or cooperative development. The Lease, and Tenant’s rights under the lease, shall be subject to all terms, conditions, provisions, and restrictions set out in the Declaration of Condominium, the plat, and restrictions, rules, and regulations as now exist or may be adopted, modified, amended, or repealed by the governing association during the Lease Term.
Tenant acknowledges that the governing association may adopt, modify, amend, or repeal rules and regulations for the use of the common areas and the Premises during the Lease Term.
* Occasional overnight guests are/are not (circle one) permitted. An occasional overnight guest is one who does not stay more than_nights in any calendar month. Landlord’s written approval is/is not (circle one) required to allow anyone else to occupy the Premises.
* Tenant may/may not (circle one) keep or allow pets or animals on the Premises without Landlord’s approval of the pet or animal in writing.
*935 Tenant shall not keep any dangerous or flammable items that might increase the danger of fire or damage on the Premises without Landlord’s consent.
Tenant shall not create any environmental hazards on or about the Premises.
Tenant shall not destroy, deface, damage, impair, or remove any part of the Premises belonging to Landlord, nor permit any person to do so.
Tenant may/may not (circle one) make any alterations or improvements to the Premises without first obtaining Landlord’s written consent to the alteration or improvement.
Tenant must act, and require all other persons on the Premises to act, in a manner that does not unreasonably disturb any neighbors or constitute a breach of the peace.
IX. MAINTENANCE. Landlord and Tenant agree that the maintenance of the Premises must be performed by the person indicated below:
A. Structural and Building Codes. Landlord and Tenant acknowledge that the maintenance of the structural elements and common areas is performed by the condominium association as part of the common area maintenance. Landlord shall assure that the association complies with applicable building, housing, and health codes relating to the Premises. If there are no applicable building, housing, or health codes, Landlord shall assure that the association maintains and repairs the roofs, porches, windows, exterior walls, screens, foundations, floors, structural components, and steps, and keeps the plumbing in reasonable working order. Landlord will be responsible for the maintenance of any items listed above for which the association is not responsible.
B. Elective Maintenance. Fill in each blank space in this section with Landlord or Tenant to show who will take care of the item noted. If a space is left blank, Landlord will be required to take care of that item.
[[Image here]]
*936 1. comply with all obligations imposed upon tenants by applicable provisions of building, housing, and health codes;
2. keep the Premises clean and sanitary;
3. remove all garbage from the dwelling unit in a clean and sanitary manner;
4. keep all plumbing fixtures in the dwelling unit clean, sanitary, and in repair; and
5. use and operate in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances, including elevators.
X. UTILITIES. Tenant shall pay all charges for hook-up, connection, and deposit for providing all utilities and utility services to the Premises during this lease except which Landlord agrees to provide at Landlord’s expense. (Specify any utilities to be provided and paid, for by Landlord such as water, sewer, oil, gas, electricity, telephone, garbage removal, etc.).
XI. LANDLORD’S ACCESS TO PREMISES. Landlord or Landlord’s Agent may enter the Premises in the following circumstances:
A. At any time for the protection or preservation of the Premises.
B. After reasonable notice to Tenant at reasonable times for the purpose of . repairing the Premises.
C. To inspect the Premises; make necessary or agreed-upon repairs, decorations, alterations, or improvements; supply agreed services; or exhibit the Premises to prospective or actual purchasers, mortgagees, tenants, workers, or contractors under any of the following circumstances:
1. with Tenant’s consent;
2. in case of emergency;
3. when Tenant unreasonably withholds consent; or
4. if Tenant is absent from the Premises for a period of at least one-half a Rental Installment Period. (If the rent is current and Tenant notifies Landlord of an intended absence, then Landlord may enter only with Tenant’s consent or for the protection or preservation of the Premises.)
XII. PROHIBITED ACTS BY LANDLORD.
A. Landlord cannot cause, directly or indirectly, the termination or unreasonable interruption of any utility service furnished to Tenant, including, but not limited to, water, heat, light, electricity, gas, elevator, garbage collection, or refrigeration (whether or not the utility service is under the control of, or payment is made by, Landlord).
B. Landlord cannot prevent Tenant’s access to the Premises by any means, including, but not limited to, changing the locks or using any bootlock or similar device.
C. Landlord cannot remove the outside doors, locks, roof, walls, or windows of the Premises except for purposes of maintenance, repair, or replacement. Landlord cannot remove Tenant’s personal property from the Premises unless the action is taken after surrender, abandonment, or a lawful eviction. If provided in a written agreement separate from the Lease, upon surrender or abandonment by Tenant, Landlord shall not be liable or responsible for storage or disposition of Tenant’s personal property. (For the purposes of this section, abandonment means Tenant is absent from the Premises for at least one-half a Rental Installment Period without paying rent or giving Landlord reasonable notice of Tenant’s absence.)
XIII. CASUALTY DAMAGE. If the Premises are damaged or destroyed other than by wrongful or negligent acts of Tenant or persons on the Premises with Tenant’s consent, so that the use of the Premises is substantially impaired, Tenant may terminate the Lease within 30 days after the damage or destruction and Tenant will immediately vacate the premises. If Tenant vacates, Tenant is not liable for rent that would have been due after the date of termination. Tenant may vacate the part of the Premises rendered unusable by the damage or destruction, in which case Tenant’s liability for rent shall be reduced by the fair rental value of the part of the Premises that was damaged or destroyed.
*937 XIV. DEFAULT.
A. Landlord’s Default. Except as noted below, Landlord will be in default if Landlord fails to comply with Landlord’s required maintenance obligations under Section IX(A) or fails to comply with other material provisions of the Lease and such failure continues for more than 7 days after Tenant delivers a written notice to Landlord that tells Landlord how Landlord has violated the Lease.
If Landlord’s failure to comply is due to causes beyond the Landlord’s control and if Landlord has made, and continues to make, every reasonable effort to correct the problem, the Lease may be altered by the parties, as follows:
1. If Landlord’s failure to comply makes the Premises uninhabitable and Tenant vacates, Tenant shall not be liable for rent during the period the Premises remains uninhabitable.
2. If Landlord’s failure to comply does not make the Premises uninhabitable and Tenant continues to occupy the Premises, the rent for the period of noncompliance will be reduced by an amount in proportion to the loss of rental value caused by the noncompliance.
B. Tenant’s Default. Tenant will be in default if any of the following occur:
1. Tenant fails to pay rent when due and the default continues for 3 days, excluding Saturday, Sunday, and legal holidays, after delivery of written demand by Landlord for payment of the rent or possession of the Premises.
2. Tenant fails to perform its obligations under the Lease, and the failure is such that Tenant should not be given an opportunity to correct it or the failure occurs within 12 months of a written warning by Landlord of a similar failure. Examples of such failures which do not require an opportunity to correct include, but are not limited to, destruction, damage, or misuse of Landlord’s or other Tenant’s property by an intentional act or a subsequent or continued unreasonable disturbance.
3. Except as provided above, Tenant fails to perform any other obligation under the Lease and the default continues for more than 7 days after delivery of written notice to Tenant from Landlord specifying the default.
C. Waiver of Default. If Landlord accepts rent knowing of Tenant’s default or accepts performance by Tenant of any provision of the Lease different from the performance required by the Lease, or if Tenant pays rent knowing of Landlord’s default or accepts performance by Landlord of any provision of the Lease different from the performance required by the Lease, the party accepting the rent or performance or making the payment shall not have the right to terminate the Lease or to bring a lawsuit for that default, but may enforce any later default.
XV. REMEDIES AND DEFENSES.
A. Tenant’s Remedies.
1. If Landlord has defaulted under the Lease and if Tenant has given Landlord a written notice describing the default and Tenant’s intention to withhold rent if the default is not corrected within 7 days, Tenant may withhold an amount of rent equal to the loss in rental value caused by the default. If Tenant’s notice advises Landlord that Tenant intends to terminate the lease if the default is not cured within 7 days and the default is not cured within the 7 days, Tenant may terminate the Lease.
2. If Tenant has given the notice referred to in subparagraph (1) above, and if Landlord has not corrected the default within 7 days, Tenant may, in addition to withholding the applicable amount of rent, file a lawsuit in county court to require Landlord to correct the default and for damages.
3. If Landlord’s default makes the Premises uninhabitable, and if Tenant has given Landlord a notice describing the default and informing Landlord that Tenant intends to terminate the Lease, then if Landlord does not cure the default within the 7-day period, Tenant may terminate the Lease at the end of the 7 days.
4. If Landlord violates the provisions of section XII, Landlord shall be liable to Tenant for actual and consequential damages or 3 months’ rent, whichever is greater, for each violation.
*938 B. Landlord’s Remedies.
1. If Tenant remains on the Premises after expiration or termination of the Lease without Landlord’s permission, Landlord may recover possession of the Premises in the manner provided for by law. Landlord also may recover double rent for the period during which Tenant refuses to vacate the Premises.
2. If Tenant defaults under the Lease by failing to pay rent, as set forth in section XIY(B)(1), Landlord may terminate Tenant’s rights under the Lease and Tenant shall vacate the Premises immediately. If Tenant defaults under the Lease for any other reason, as set forth in sections XIV(B)(2) or (3) above, Landlord may terminate Tenant’s rights under the Lease and Tenant shall vacate the Premises within 7 days of delivery of the notice of termination.
3. If Tenant fails to cure a default within the time specified in the notice to Tenant, Landlord may recover possession of the Premises as provided by law.
4. Landlord shall not recover possession of the Premises except:
a. in a lawsuit for possession;
b. when Tenant has surrendered possession of the Premises to Landlord; or
e. when Tenant has abandoned the Premises. Absent actual knowledge of abandonment, the Premises shall be considered abandoned if Tenant is absent from them for at least one-half a Rental Installment Period, the rent is not current, and Tenant has not notified Landlord, in writing, of an intended absence.
5. If Tenant has defaulted under the Lease and Landlord has obtained a writ of possession, if Tenant has surrendered possession of the Premises to Landlord, or if Tenant has abandoned the Premises, Landlord may:
a. treat the Lease as terminated, retake possession for Landlord’s own account, and any further liability of Tenant will be ended;
b. retake possession of the Premises for Tenant’s account. Tenant will remain liable for the difference between rent agreed to be paid under the Lease and rent Landlord is able to recover in good faith from a new tenant; or
c. do nothing, and Tenant will be liable for the rent as it comes due.
6. If Landlord retakes possession of the Premises for Tenant’s account, Landlord must make a good faith effort to re-lease the Premises. Any rent received by Landlord as a result of the new lease shall be deducted from the rent due from Tenant. For purposes of this section, “good faith” in trying to re-lease the Premises means that Landlord shall use at least the same efforts to re-lease the Premises as were used in the initial rental or at least the same efforts as Landlord uses in attempting to lease other similar property. It does not require Landlord to give a preference in leasing the Premises over other vacant properties that Landlord owns or has the responsibility to rent.
C. Other Remedies. Each party also may have other remedies available at law or in equity.
D. Defenses. In a lawsuit by Landlord for possession of the Premises based upon nonpayment of rent or in a lawsuit by Landlord seeking to obtain unpaid rent, Tenant may assert as a defense Landlord’s failure to perform required maintenance, as set forth in Section IX(A) above. Landlord’s failure to provide elective maintenance, as set forth in Section IX(B) above, shall not be a defense to any lawsuit by Landlord for possession of the Premises unless otherwise provided by the Lease or applicable law. Tenant also may raise any other defense, whether legal or equitable, that Tenant may have, including the defense of retaliatory conduct.
E. Payment of Rent to Court. In any lawsuit by Landlord for possession of the Premises, if Tenant raises any defense other than payment, Tenant must pay into the registry of the court the past due rent set forth in Landlord’s complaint, or an amount determined by the court, and the rent which comes due during the lawsuit, as it comes due. Failure of Tenant to pay the rent into the registry of the court will be a waiver of Tenant’s defenses other than payment.
*939 F.Attorney’s Fees. In any lawsuit brought to enforce the Lease or under applicable law, the party who wins may recover its reasonable court costs and attorneys’ fees from the party who loses.
* XVI. ASSIGNMENT AND SUBLEASING. Tenant may/may not (circle one) assign the Lease or sublease all or any part of the Premises without first obtaining Landlord’s written approval and consent to the assignment or sublease.
* XVII. RISK OF LOSS. Landlord shall/shall not (circle one) be liable for any loss by reason of damage, theft, or otherwise to the contents, belongings, and personal effects of the Tenant, or Tenant’s family, agents, employees, guests, or visitors located in or about the Premises, or for damage or injury to Tenant or Tenant’s family, agents, employees, guests or visitors. Landlord shall not be liable if such damage, theft, or loss is caused by Tenant, Tenant’s family, agents, employees, guests, or visitors. Nothing contained in this provision shall relieve Landlord or Tenant from responsibility for loss, damage, or injury caused by its own negligence or willful conduct.
XVIII. SUBORDINATION. The Lease is subordinate to the lien of any mortgage encumbering the fee title to the Premises from time to time.
XIX. LIENS. Tenant shall not have the right or authority to encumber the Premises or to permit any person to claim or assert any lien for the improvement or repair of the Premises made by Tenant. Tenant shall notify all parties performing work on the Premises at Tenant’s request that the Lease does not allow any liens to attach to Landlord’s interest.
XX. APPROVAL CONTINGENCY. The Lease is/is not (circle one) conditioned upon approval of Tenant by the association that governs the Premises.
XXI. RENEWAL/EXTENSION. The Lease can be renewed or extended only by a written agreement signed by both Landlord and Tenant, but no renewal may extend the term to a date more than 1 year after the lease begins. A new lease is required for each year.
XXII. MISCELLANEOUS.
A. Time is of the essence of the Lease.
B. The Lease shall be binding upon and for the benefit of the heirs, personal representatives, successors, and permitted assigns of Landlord and Tenant, subject to the requirements specifically mentioned in the Lease. Whenever used, the singular number shall include the plural or singular and the use of any gender shall include all appropriate genders.
C. The agreements contained in the Lease set forth the complete understanding of the parties and may not be changed or terminated orally.
D. No agreement to accept surrender of the Premises from Tenant will be valid unless in writing and signed by Landlord.
E. All questions concerning the meaning, execution, construction, effect, validity, and enforcement of the Lease shall be determined pursuant to the laws of Florida.
F. The place for filing any suits or other proceedings with respect to the Lease shall be the county in which the Premises is located.
G. Landlord and Tenant will use good faith in performing their obligations under the Lease.
H. As required by law, Landlord makes the following disclosure:
“RADON GAS.” Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.
*940 [[Image here]]

. The proposed advisory opinion is limited to residential leases of one year or less in duration; it does not address nonresidential leases and leases of a duration greater than one year.

. Rule 10-1.1(b) of the Rules Regulating The Florida Bar authorizes nonlawyers to assist in the completion of legal forms approved by this Court.

3.We express no opinion as to the correctness of this position.