ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| **EL PUEBLO DE PUERTO RICO**<br><br>Apelado<br><br>v.<br><br>**ANIBAL ANTONIO PADUA RODRÍGUEZ**<br><br>Apelante | KLAN202500374 | **APELACIÓN acogida como *CERTIORARI*** procedente del Tribunal de Primera Instancia, Sala Superior de **Aguadilla**<br><br>Crim. Núm.:<br>**A SC2024G0102**<br>A SC2024G0110<br>A SC2024G0111<br>A SC2024G0112<br><br>Sobre: Art. 401 SC; Art. 412 SC |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

### SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2025.

Comparece ante nosotros, mediante recurso de certiorari, Aníbal Antonio Padua Rodríguez (en adelante "peticionario" o "Padua Rodríguez"). Solicita que revoquemos la determinación del Tribunal de Primera Instancia, Sala Superior de Aguadilla y, en consecuencia, decretemos que el arresto efectuado por los agentes de la Policía de Puerto Rico sobre su persona fue uno ilegal, sin motivos fundados y en violación al debido proceso de ley.

Examinados los escritos presentados, así como la transcripción de la prueba oral y el derecho aplicable, acordamos expedir el auto de *certiorari* y confirmar la *Resolución* apelada.

### I.

Surge del expediente ante nuestra consideración que, por hechos ocurridos el 23 de marzo de 2024, el Ministerio Público

---

[1] Véase *Orden Administrativa DJ 2024-062C* de 6 de mayo de 2025, sobre enmienda a la orden de designación de Paneles en el Tribunal de Apelaciones.

presentó cuatro denuncias contra Aníbal Antonio Padua Rodríguez, una por infracción al Artículo 412 y otras tres por infracciones al Artículo 401, todos de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 LPRA sec. 2401 y 2412. En específico, las referidas denuncias leen como sigue:

> El referido imputado ANIBAL A. PADUA RODRIGUEZ, allá en o para el día 23 de marzo de 2024 y en San Sebastián, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia de Puerto Rico, Sala de Aguadilla, ilegal, voluntaria, criminalmente y en común y mutuo acuerdo con REYNALDO ACEVEDO PRATTS poseía con la intención de distribuir la sustancia controlada conocida por MARIHUANA, sin estar legalmente autorizado para ello.

> El referido imputado ANIBAL A. PADUA RODRIGUEZ, allá en o para el día 23 de marzo de 2024 y en San Sebastián, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia de Puerto Rico, Sala de Aguadilla, ilegal, voluntaria, criminalmente y en común y mutuo acuerdo con REYNALDO ACEVEDO PRATTS, CARLOS E. TORRES RIGUAL y FRANCISCO J. SOTO SANTIAGO poseía con la intención de distribuir la sustancia controlada conocida por MARIHUANA, sin estar legalmente autorizado para ello.

> El referido imputado ANIBAL A. PADUA RODRIGUEZ, allá en o para el día 23 de marzo de 2024 y en San Sebastián, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia de Puerto Rico, Sala de Aguadilla, ilegal, voluntaria, criminalmente y en común y mutuo acuerdo con REYNALDO ACEVEDO PRATTS, CARLOS E. TORRES RIGUAL y FRANCISCO J. SOTO SANTIAGO poseía con la intención de distribuir la sustancia controlada conocida por COCAINA, sin estar legalmente autorizado para ello.

> El referido imputado ANIBAL A. PADUA RODRIGUEZ, allá en o para el día 23 de marzo de 2024 y en San Sebastián, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia de Puerto Rico, Sala de Aguadilla, ilegal, voluntaria, criminalmente y en común y mutuo acuerdo con REYNALDO ACEVEDO PRATTS, CARLOS E. TORRES RIGUAL y FRANCISCO J. SOTO SANTIAGO poseyó, transportó y ocultó parafernalia relacionada con sustancias controladas para preparar, empacar, almacenar y guardar sustancias controladas en violación de esta Ley. Consistente en que el imputado poseía un sinnúmero de bolsas plásticas transparentes con cierre a presión de distintas tonalidades y una balanza comúnmente utilizada para pesar sustancias controladas.

Luego, el 25 de abril de 2024, se celebró la vista preliminar en el presente caso. Una vez concluida la misma, el foro de instancia

determinó causa para juicio. Consecuentemente, el 8 de mayo de 2024, se llevó a cabo la correspondiente lectura de acusación. En esta, a petición del Ministerio Público, se desestimó una de las acusaciones (ASC2024G0109) contra Padua Rodríguez por duplicidad al amparo de la Regla 247-A de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II, R. 247, ya que la primera copiaba la misma acusación (ASC2024G0110) de posesión con intención de distribuir la sustancia controlada conocida como marihuana.

Ahora bien, el 17 de enero de 2025, Padua Rodríguez instó *Moción de Desestimación por Violación al Debido Proceso de Ley por Arresto Ilegal.* En esta, en síntesis, arguyó que los agentes del orden público lo arrestaron sin que mediara una orden de arresto en su contra, lo cual constituyó un arresto ilegal. Por tal razón, concluyó que el foro primario debía desestimar las acusaciones en su contra.

En desacuerdo, el 3 de febrero de 2025, el Ministerio Público presentó *Moción en Oposición a Supresión de Evidencia.* Allí refutó que en el caso de autos no ocurrió un arresto ilegal sino una restricción por motivos de seguridad mientras los agentes del orden público diligenciaban dos órdenes de registro y allanamiento válidas sobre una residencia y un vehículo de motor.

Así las cosas, el 17 de marzo de 2025, el foro de instancia celebró una vista evidenciaria para atender la solicitud de desestimación instada por Padua Rodríguez. En la misma, el Ministerio Público presentó prueba testifical a través de los testimonios de los agentes David González Ruiz y Erick Cordero Pérez y el sargento Luis Acevedo Valentín. Para un mejor entendimiento de los eventos suscitados ante el foro primario, procedemos a realizar un resumen de los testimonios vertidos.

Agte. David González Ruiz

Manifestó que se desempeñaba como agente para la Unidad de Plan Integral de la Preventiva del área de Aguadilla y que, como parte de sus labores, el 23 de marzo de 2024, se le asignó cooperar con la División de Drogas. Expuso que ese mismo día se discutió un plan de trabajo dirigido a diligenciar una orden de allanamiento en contra de Padua Rodríguez, un vehículo marca Hyundai Accent, color blanco, con tablilla ISU-810 y una residencia ubicada en la calle Gorrión, intersección calle Periquito, en el Barrio Hato Arriba de San Sebastián, Puerto Rico.[2]

Expuso que recibió instrucciones de diligenciar las referidas órdenes y que, a eso de las cuatro y cuarenta (4:40), aproximadamente, otro de los agentes, de apellido Cordero, transfirió por radio que en la residencia a ser allanada se encontraban cuatro (4) personas, incluyendo a Padua Rodríguez. Asimismo, declaró que, el agente Cordero informó vía radio que Padua Rodríguez y otro sujeto salieron corriendo y abordaron un vehículo. Indicó que observó al primero agitado, manoteando y vociferando palabras y expresó que fue en ese momento que el sargento ordenó restringirlos por seguridad. [3]

De otra parte, manifestó que, tras diligenciar la orden de allanamiento, en el área de la marquesina de la residencia se ocupó un frasco color negro de cristal, el cual contenía picadura de marihuana, y un bulto con dinero y una tarjeta ATH a nombre de Francisco Soto en su interior. Expresó además que a Padua Rodríguez se le ocupó dinero y que, dentro de la residencia, ocuparon las sustancias controladas de marihuana y cocaína, parafernalia, dos armas de bala de salva y dinero en efectivo. En el

---

[2] Transcripción de la Prueba Oral (TPO) del 17 de marzo de 2025, págs. 4-6.
[3] TPO del 17 de marzo de 2025, págs. 10-12.

interior del vehículo aseveró ocuparon bolsitas con picadura de marihuana.[4]

Agte. Erick Cordero Pérez

Declaró que se desempeñaba como agente para la División de Drogas de Aguadilla y que, dentro de sus funciones, se encontraba realizando investigaciones sobre personas que "bregan" con sustancias controladas y armas ilegales. Testificó que para el 23 de marzo de 2024 inició servicios bajo la supervisión del sargento Luis Acevedo Valentín y que, en la misma fecha, se discutió un plan de trabajo relacionado al diligenciamiento de una orden de registro y allanamiento, la cual había sido investigada por él. Manifestó que su tarea consistió en ser el identificador, por lo que, tras detenerse en una calle cercana al lugar a allanarse y observar que Padua Rodríguez se encontraba en el interior de la residencia acompañado de tres individuos, así lo informó por radio portátil a sus compañeros. Añadió que luego comunicó que estos salieron corriendo y que Padua Rodríguez se montó en un vehículo marca Hyundai junto con otra persona. Señaló que se dirigió a otra calle para poder detenerlo, pero cuando llegó, el vehículo y sus ocupantes ya habían sido detenidos por varios compañeros. Expresó que no vio a ninguno de los cuatro cometiendo un delito en su presencia y que él no fue quien ordenó el arresto.[5]

Sgto. Luis Acevedo Valentín

Testificó que se desempeñaba como sargento de la Policía de Puerto Rico para la División de Drogas de Aguadilla y que, siendo supervisor de la Sección de Investigaciones de Campo, su función era evaluar las querellas especiales y asignarlas a un agente. Aseveró que, para la fecha del 23 de marzo de 2024, sus labores iban dirigidas a la supervisión de allanamientos y manifestó que, fue

---

[4] TPO del 17 de marzo de 2025, págs. 12-14.
[5] TPO del 17 de marzo de 2025, págs. 57-60, 64-65.

él quien discutió el plan de trabajo relacionado a la orden de registro y allanamiento en el pueblo de San Sebastián, la cual había sido investigada por el agente Cordero Pérez e iba dirigida a Padua Rodríguez. Explicó que una vez estaban en el área fueron informados de que Padua Rodríguez y otro joven salieron corriendo hacia un vehículo y que, tras movilizarse a dicho lugar, observó que el auto iba en retroceso, pero se desvió y cayó en un "sajón". Indicó que en ese momento el vehículo quedo detenido, por lo que los agentes lograron intervenir con Padua Rodríguez y el otro joven. A su vez, declaró que este tenía una actitud agresiva y que les gritó a los demás jóvenes que no hablaran, que tenían que enseñar la orden de allanamiento y que, si había, no hicieran ningún tipo de comentario. Posteriormente, expresó que para poder realizar el registro con tranquilidad y seguridad les indicó a los agentes que restringieran a los jóvenes.[6]

Efectuada la referida vista, el foro de instancia emitió y notificó la *Resolución* aquí impugnada. El foro primario concluyó que conforme a la Regla 11 de Procedimiento Criminal, 34 LPRA Ap. II, R. 11, Padua Rodríguez brindó motivos fundados a los agentes para arrestarlo y, en consecuencia, determinó que, debido a la actitud de obstrucción a la justicia, el arresto de Padua Rodríguez no fue uno ilegal. Asimismo, determinó que en esa etapa de los procedimientos se había presentado evidencia suficiente para sostener que se cometieron violaciones a los artículos 401 y 402 de la Ley de Sustancias Controladas de Puerto Rico, *supra*, y que con toda probabilidad Padua Rodríguez fue quien los cometió. Por tanto, declaró *No Ha Lugar* la moción de desestimación.

---

[6] TPO del 17 de marzo de 2025, págs. 68-72.

Inconforme con la determinación antes reseñada, Padua Rodríguez acude ante nosotros mediante el recurso de certiorari de epígrafe, en el cual plantea el siguiente señalamiento de error:

> Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Aguadilla, al declarar no ha lugar la moción de desestimación por violación al debido proceso de ley por arresto ilegal presentada por la parte recurrente al hacer una interpretación errónea del derecho en contraposición con la prueba presentada por el Ministerio Público y admisiones hechas en corte abierta por los agentes del estado.

El 13 de junio de 2025, el Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General, presentó su *Escrito en Cumplimiento de Orden.*

Con el beneficio de la transcripción de la prueba oral y la comparecencia de todas las partes, resolvemos.

**II.**

La Regla 11 de Procedimiento Criminal, 34 LPRA Ap. II, enumera las circunstancias en las cuales un funcionario del orden público podrá hacer un arresto sin orden previa. Esta dispone que:

> a)  Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia. En este caso deberá hacerse el arresto inmediatamente o dentro de un término razonable después de la comisión del delito. De lo contrario el funcionario deberá solicitar que se expida una orden de arresto.
>
> b)  Cuando la persona arrestada hubiese cometido un delito grave (*felony*) aunque no en su presencia.
>
> c)  Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave (*felony*), independientemente de que dicho delito se hubiere cometido o no en realidad.
>
> [...]

El motivo fundado es aquella información o aquel conocimiento que conduce a creer que el arrestado ha cometido un delito, según la persona ordinaria y prudente. *Pueblo v. González Rivera,* 100 DPR 651, 654-655 (1972). Al determinar la existencia de motivos fundados se debe analizar bajo los criterios de

probabilidad y razonabilidad. La clave es que el agente del orden público que lleva a cabo el arresto y registro sin orden judicial previa debe tener al momento de hacerlo base razonable para creer que se ha violado o se va a violar la ley. Es decir, si bajo un análisis de la totalidad de las circunstancias, una persona prudente y razonable podría creer que se ha cometido un delito o que va a cometerse. *Pueblo v. Nieves Vives*, 188 DPR 1, 13 (2013). En fin, los motivos fundados son sinónimo de causa probable. *Íd.* a la pág. 14.

**B.**

Conforme al Art. II, Sec. 10 de nuestra Constitución y a la Cuarta Enmienda de la Constitución de los Estados Unidos, todo ciudadano goza del derecho a la protección contra registros, incautaciones y allanamientos irrazonables que puedan afectar sus personas, casas, papeles y efectos. Esto, en protección al derecho a la intimidad y dignidad del individuo frente a actuaciones arbitrarias e irrazonables del Estado. *Pueblo v. Nieves Vives,* supra, págs., 11-12; *Pueblo v. Díaz, Bonano*, 176 DPR 601 (2009). Sin embargo, el requerimiento constitucional de una orden judicial previa no es absoluto, pues hay situaciones excepcionales y definidas estrechamente por la jurisprudencia en donde se ha reconocido la validez de un registro o arresto sin una orden. Lo que la Constitución pretende evitar es la actuación irrazonable del Estado. *Pueblo v. Rivera Colón*, 128 DPR 672, 682 (1991). En consecuencia, se prohíbe el arresto de personas o registros o allanamientos sin previa orden judicial basada en causa probable. Esto, pues toda incautación o registro realizado sin orden se presume irrazonable y, por tanto, inválido. Véase, *Pueblo v. Serrano Reyes*, 176 DPR 437, 447 (2009).

En concordancia con las mencionadas disposiciones constitucionales, la Regla 234 de Procedimiento Criminal, 34 LPRA Ap. II, R. 234, establece que la evidencia obtenida en violación al mandato constitucional será suprimida e inadmisible en los

Tribunales como prueba de la comisión de un delito. La norma de exclusión persigue los siguientes propósitos importantes: (1) provee un remedio efectivo a la víctima del registro y allanamiento irrazonable o ilegal; (2) evita que el gobierno se beneficie de sus propios actos ilegales; (3) preserva la integridad del Tribunal, y (4) disuada a los oficiales del orden público a que en el futuro no repitan las acciones objeto de la impugnación. E. L. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1991 Vol. I, Sec. 6.2, págs. 284-285. La moción de supresión de evidencia presentada bajo la Regla 234 de Procedimiento Criminal, *supra*, es el mecanismo procesal para hacer valer el derecho de la ciudadanía contra registros, incautaciones y allanamientos irrazonables por parte del Estado. Mediante esta Regla, un ciudadano puede solicitar, antes del juicio, la supresión de evidencia material y testifical.

En su aspecto sustantivo, la Regla 234, *supra*, permite la supresión de evidencia obtenida en contravención a la cláusula constitucional contra registros, allanamientos e incautaciones irrazonables. Como señalamos, debido a que un registro efectuado sin orden judicial previa se presume irrazonable e inválido, esta regla excluye evidencia obtenida en dicho escenario, salvo concurran las circunstancias de excepción reconocidas en la jurisprudencia. Véase, *Pueblo v. Acevedo Escobar*, 112 DPR 770, 775 (1982). En fin, al evaluar la razonabilidad de la intervención del Estado con los derechos constitucionales de la persona, debemos considerar los intereses protegidos frente a la totalidad de las circunstancias involucradas en la actuación gubernamental impugnada. *Pueblo v. Yip Berríos*, 142 DPR 386, 399 (1997).

Ahora bien, en atención a la moción de supresión de evidencia, se celebrará una vista y en dicha vista, el Ministerio Público tendrá el peso de la prueba en cuanto a la existencia de

alguna de las excepciones que ameritan un arresto o registro sin orden judicial previa. El foro judicial está facultado para aquilatar la credibilidad de los testigos que declaren en la mencionada vista, debido a que es una función inherente del tribunal al celebrar una vista evidenciaria para oír prueba sobre cualquier cuestión de hecho necesaria para la resolución de la solicitud. Véase, E. L. Chiesa, *Derecho Procesal Penal: Etapa Investigativa*, Publicaciones JTS, 2006, a la pág. 142-143; *Pueblo v. Bonilla Romero*, 120 DPR 92, 109 (1987).

### III.

En su único señalamiento de error, el peticionario sostiene que el foro primario incidió al declarar *No Ha Lugar* la moción de desestimación por violación al debido proceso de ley por arresto ilegal al hacer una interpretación errónea del derecho en contraposición con la prueba presentada por el Ministerio Público y las admisiones hechas en corte abierta por los agentes del estado.

Cónsono con lo anterior, Padua Rodríguez alega que no existía una orden de arresto en su contra y que los agentes de la policía, al llegar al lugar donde efectuarían la orden de registro y allanamiento, lo primero que hicieron fue arrestarlo junto con los demás coacusados. Lo anterior, sin que existiera motivos fundados para creer que se estaba cometiendo un delito en su presencia indistintamente que se estuviera cometiendo o no en realidad. Aduce el peticionario que del testimonio de los agentes se desprendió que estos efectuaron los arrestos porque Padua Rodríguez hizo vociferaciones a los demás acusados. No obstante, asevera que, tal y como fue reconocido por los policías en corte abierta, dichos actos no constituyeron delito alguno. Asimismo, señala que los agentes no lo acusaron de obstrucción a la justicia a pesar de que el caso fue consultado con el Ministerio Público, lo que según su posición arroja dudas sobre el proceder de los agentes.

De otra parte, el Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General, argumenta que los agentes tuvieron motivo fundado para entender que se había cometido un delito luego de que Padua Rodríguez saliera corriendo de la propiedad en la que estos se disponían a diligenciar una orden de registro. A su vez, destaca que, tras ser intervenido por los agentes que detuvieron el vehículo mientras huía, Padua Rodríguez se agitó, manoteó y gritó. Por ello, razonó que existía motivo fundado para detenerlo por cuestiones de seguridad.

Tras un examen detallado y desapasionado del expediente, con especial atención a la transcripción de la prueba oral vertida en la vista, concluimos que la resolución en cuestión debe ser confirmada. Veamos.

En el presente caso, el Ministerio Público presentó como prueba de los motivos fundados para intervenir con el peticionario los testimonios de los agentes González Ruiz y López Cordero y del sargento Acevedo Valentín. Así las cosas, al analizar en conjunto los testimonios sobre los motivos fundados para la intervención que generó la detención de Padua Rodríguez, resolvemos que estaba presente uno de los escenarios contemplados en la Regla 11 de Procedimiento Criminal, *supra.* En específico, surgió de los testimonios vertidos en la vista que el peticionario salió huyendo de la residencia en el vehículo contra el cual pesaba una orden de registro y allanamiento y que, una vez este fue interceptado por la policía, comenzó a mostrar una actitud de obstrucción a la justicia.

Así, entendemos que el Ministerio Público rebatió la presunción de ilegalidad sobre el arresto sin orden judicial efectuado por los agentes del orden público. Adicional, es claro que al peticionario no se le violentó la protección constitucional contra registros, incautaciones y allanamientos irrazonables pues la

evidencia incautada fue obtenida a raíz de órdenes de registro válidas.

Por todo lo anterior, a la luz del derecho aplicable y los hechos específicos del caso, no encontramos razón alguna para inmiscuirnos en la apreciación de la prueba testifical que realizó el foro primario. No existe en el expediente indicios de pasión, prejuicio, parcialidad o error manifiesto en la determinación impugnada.

**IV.**

Por los fundamentos antes esbozados, se expide el auto de *certiorari* y se confirma la *Resolución* emitida el 31 de marzo de 2025 por el Tribunal de Primera Instancia, Sala Superior de Aguadilla. Se devuelve el caso al foro de instancia para la continuación de los procedimientos.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones